PRESENT: Carrico, C.J., Compton, Lacy, Hassell, Koontz, and Kinser, JJ., and Stephenson, Senior Justice

LEMAR JAMIE ANDERSON, S/K/A
 LAMAR JAMIE ANDERSON

OPINION BY
v.  Record No. 980486    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                  November 6, 1998
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

The sole issue in this appeal is whether the Court of Appeals correctly decided that the trial court did not err in denying the defendant's motion to suppress evidence seized from his person and property.

I

On January 9, 1995, Lemar Jamie Anderson entered into a written plea agreement whereby he agreed to plead guilty to possession of a firearm upon school property in violation of Code § 18.2-308.1.  The agreement provided that Anderson would be sentenced to two years' imprisonment with execution of the sentence suspended upon certain terms and conditions, one of those being that he

> shall waive his Fourth Amendment right against
> unreasonable searches and seizures for a period of one
> year from the date of sentencing, to-wit:  he shall
> submit his person, place of residence, and property to
> search or seizure at any time of the day or night by
> any law enforcement officer with or without a warrant.

The plea agreement was signed by Anderson, his attorney, and the attorney for the Commonwealth. Above Anderson's signature, the following was set forth in large type:

> BY HIS SIGNATURE BELOW, [ANDERSON] ACKNOWLEDGES THAT, IF THIS AGREEMENT IS ACCEPTED BY THE COURT, HE UNDERSTANDS HE IS WAIVING HIS FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES DURING THE PERIOD SPECIFIED ABOVE.

Thereafter, the plea agreement was presented to the trial court, the Circuit Court of the City of Virginia Beach. The court carefully questioned Anderson regarding his guilty plea and the terms and conditions of his plea agreement. Anderson informed the court that he fully understood those terms and conditions and the consequences of his guilty plea. The court also ascertained that Anderson's counsel had reviewed with Anderson the terms and conditions of the agreement, particularly the provision that Anderson "waives his right to be free from unreasonable search and seizures for a period of one year."

At the sentencing hearing, the Commonwealth introduced certified copies of Anderson's two prior convictions for possession of marijuana with intent to distribute, and the attorney for the Commonwealth stated the following:

> [W]e've given [Anderson] every incentive in the world to remain of good behavior. He will know as he's out and about that he can be stopped at any time and be checked to make sure he is not carrying drugs or weapons or anything else.

2

The trial court found that Anderson's guilty plea was entered freely and voluntarily. The court also approved the plea agreement and incorporated its terms and conditions into its January 9, 1995 sentencing order.

On June 21, 1995, two off-duty Virginia Beach police officers working as private security guards saw Anderson and two companions alight from a van and "being very loud" in public. The officers approached the three and ordered them to stop, at which time they began to walk faster.

When the officers caught up to them, Anderson dropped "a white tissue or white bag" on the ground and placed his backpack by an apartment door. One of the companions took the backpack inside the apartment, but an officer demanded that the backpack be brought outside. The individual then gave the backpack to the officer, and the officer found a .357 magnum handgun inside the backpack. The officer then placed Anderson under arrest for carrying a concealed weapon.

The officer retrieved the "small white baggie" that Anderson had dropped to the ground. The baggie contained a rock-like substance that proved to be 0.07 grams of cocaine. The officer also seized another baggie that Anderson had dropped to the ground as he was placed in the patrol car. This baggie contained 0.18 ounces of marijuana. The Commonwealth concedes

3

that, absent a valid waiver, the circumstances did not support a warrantless search of Anderson's person and property.

Anderson was charged with possession of cocaine, possession of a firearm after having been convicted of a felony, and possession of marijuana.[1]  Prior to trial, he moved to suppress the seized evidence, contending that his waiver of his Fourth Amendment rights in the January 5, 1995 plea agreement was invalid.  The trial court denied the motion to suppress, finding that the waiver was valid.

Anderson then entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress.  A panel of the Court of Appeals affirmed the trial court's denial of the motion to suppress, finding that Anderson's waiver of his Fourth Amendment rights in the January 5, 1995 plea agreement was valid.  Anderson v. Commonwealth, 25 Va. App. 565, 490 S.E.2d 274 (1997).  Upon a rehearing en banc, the full Court of Appeals also affirmed the trial court's decision for the reasons set forth in the panel opinion.  Anderson v. Commonwealth, 26 Va. App. 535, 495 S.E.2d 547 (1998).  We awarded Anderson an appeal.

II

---

[1] Anderson also was charged with possession of a controlled substance while in possession of a firearm, but this charge was nolle prossed.

4

Anderson advances a number of arguments to support his contention that the waiver of his Fourth Amendment rights was invalid. He first asserts that the waiver was the result of coercion, claiming that the waiver was not "negotiated at arms length by equal parties," but was "dictated by the Commonwealth." According to Anderson, "[h]e sought only to avoid time in jail."

To justify a search on the basis of a waiver, the Fourth Amendment requires the Commonwealth to show that the waiver was given voluntarily and did not result from coercion. See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). Whether a waiver is given voluntarily is a factual issue to be determined from all the circumstances. Id.

In the present case, Anderson, while represented by counsel, executed the plea agreement containing the waiver. He acknowledged to the trial court that the agreement, including the waiver, was made knowingly and voluntarily, and he requested that the trial court approve it. The trial court was careful to make certain that Anderson understood the consequences of the waiver and that it was his voluntary act.

Therefore, we reject Anderson's contention and hold that the waiver was not the result of coercion. Indeed, if Anderson were correct, all plea agreements would be invalid on the basis of coercion because all such agreements involve to some degree a

5

desire by a defendant to limit or diminish punishment. As the Supreme Court has held, however, a defendant can voluntarily agree to a bargain that provides for one of two undesirable options. Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978). Furthermore, we agree with the Court of Appeals' observation that "[a]n offender's selection between two sanctions resulting from his own wrongdoing constitutes choice, not coercion." Anderson, 25 Va. App. at 573, 490 S.E.2d at 278.

Anderson also asserts that the trial court acted unreasonably in conditioning the suspended sentence upon a waiver of his Fourth Amendment rights. Code § 19.2-303 empowers a trial court to place conditions on a suspended sentence. The sole statutory limitation placed upon a trial court's discretion in its determination of such conditions is one of reasonableness. Dyke v. Commonwealth, 193 Va. 478, 484, 69 S.E.2d 483, 486 (1952) (decided under predecessor statute).

In the present case, it is difficult to understand how Anderson can now contend that this condition of his suspended sentence was unreasonable when he knowingly and voluntarily agreed to it. Moreover, Anderson had a history of drug and firearm offenses, and the waiver provided the Commonwealth with a useful means of verifying Anderson's compliance with the condition that he would be of good behavior. Both Anderson and the Commonwealth benefited from the plea agreement in that

6

Anderson received his freedom and the Commonwealth gained some control over his behavior. We conclude, therefore, that, based upon the nature of the offense, Anderson's background, and the surrounding circumstances, the Court of Appeals correctly decided that the trial court acted reasonably and did not abuse its discretion in conditioning Anderson's suspended sentence upon the waiver.

Anderson also claims that the waiver of his Fourth Amendment rights was invalid because it was overly broad. Again, we cannot ignore the fact that the waiver was the product of Anderson's voluntary act. As previously noted, its purpose was to ensure Anderson's good conduct. To achieve that end, the scope of the waiver needed to be broad, requiring Anderson to submit his person and property to search or seizure at any time by any law enforcement officer with or without a warrant. The scope of the waiver was broad, but, in the circumstance of the present case, we cannot say the waiver was invalid for its being overly broad. We also cannot say the one-year duration of the waiver, agreed upon by Anderson, invalidated it.

Anderson next contends that, by his plea agreement, he did not presently waive his Fourth Amendment rights; rather, he merely agreed that he would give such a waiver in the future should a search of his person or property be sought. The

7

language of the waiver, Anderson argues, denotes a requirement of future action by him.  We do not agree.

We think the language of the waiver is clear and unambiguous, and we agree with the Court of Appeals that the "words 'shall waive' . . . state an imperative" and do not refer to a future act.  Moreover, Anderson overlooks the provision in the plea agreement immediately above his signature whereby he acknowledged that he "IS WAIVING" his Fourth Amendment rights.[2]

Finally, we find meritless any contention that the officers' lack of prior knowledge of Anderson's waiver rendered the search invalid.  The waiver expressly states that Anderson agreed to submit his person or property to "any law enforcement officer." (Emphasis added.)  Indeed, Anderson concedes on brief that the waiver "did not have to be related to the supervision of [his] probation."

### III

In sum, we hold that the Court of Appeals correctly decided that the waiver agreed upon by Anderson and adopted by the trial court was given knowingly and voluntarily, was not the result of

---

[2] Anderson argues that, because he merely agreed to a future waiver, his refusal to submit to a search on June 21, 1995, could amount to no more than a violation of the conditions of his suspended sentence and could not validate an unreasonable warrantless search.  In holding that Anderson gave a present waiver, we reject this argument.  Moreover, the record does not indicate that Anderson ever refused to submit to a search on June 21, 1995.

8

coercion, was not overly broad, and was reasonable in the circumstances of this case.  Thus, the waiver was valid.

Accordingly, the judgment of the Court of Appeals will be affirmed.

<u>Affirmed</u>.

JUSTICE KINSER, with whom JUSICE LACY and JUSTICE HASSELL join, concurring.

I concur in the majority's decision to affirm the judgment of the Court of Appeals only because I conclude that Lemar Jamie Anderson voluntarily, with advice of counsel, entered into the plea agreement in which he waived his Fourth Amendment right against unreasonable searches and seizures and agreed to submit to such searches at any time, by any law enforcement officer. Anderson obviously accepted this broad waiver because he was bargaining with the Commonwealth in order to avoid incarceration.

However, I draw a distinction between this case and one in which a trial court imposes the same broad waiver of Fourth Amendment rights as a condition of probation when the defendant has not consented to the waiver in a plea agreement.  In the latter situation, I believe that such a waiver might be constitutionally impermissible if it allowed law enforcement officers to conduct warrantless searches of probationers for investigative purposes, as was done in this case, rather than

9

limiting such searches to those that are reasonably related to furthering the goals of probation.  See United States v. Ooley, 116 F.3d 370, 372 (9th Cir. 1997), cert. denied, ___ U.S. ___, 118 S.Ct. 2391 (1998) (holding that legality of warrantless search of probationer depends upon showing that search was true probation search and not investigative search); State of New Hampshire v. Zeta Chi Fraternity, 696 A.2d 530, 540 (N.H.), cert. denied, ___ U.S. ___, 118 S.Ct. 558 (1997)("[W]hen a condition of probation authorizes random warrantless searches and the condition is reasonably related to the supervision and rehabilitation of the probationer, a warrantless probation search is constitutionally permissible.").  Otherwise, law enforcement officers could use the condition of probation waiving Fourth Amendment rights as a subterfuge to turn every unreasonable search of a probationer into a lawful one.

Because of these concerns, I write separately and respectfully concur.

JUSTICE KOONTZ, dissenting.

I respectfully dissent.

While I agree with the majority's view that Anderson's waiver of his Fourth Amendment rights was made knowingly and voluntarily, and that the trial court acted within its discretion in making this a condition of Anderson's suspended

10

sentence, I do not agree that "the scope of the waiver needed to be broad, requiring Anderson to submit his person and property to search or seizure <u>at any time by any law enforcement officer</u>."  Rather, I would adopt the view of the dissent in the Court of Appeals that the scope of the waiver was limited to its intended purpose of "allow[ing] law enforcement officers, including the defendant's probation officer, who knew of the defendant's probationary status, to be able to monitor the defendant's conduct and behavior by searching him, his home, his vehicle, or personal belongings without notice and without probable cause."  <u>Anderson v. Commonwealth</u>, 25 Va. App. 565, 578, 490 S.E.2d 274, 280 (1997)(Coleman, J., concurring in part, and dissenting in part); <u>see also</u> <u>Anderson v. Commonwealth</u>, 26 Va. App. 535, 495 S.E.2d 547 (1998)(en banc) (four judges dissenting for the same reasons set forth in the panel dissent).[3]

Waivers such as the one obtained in this case are not intended to provide the state with an absolute authority to harass the probationer with impunity.  <u>United States v. Johnson</u>, 722 F.2d 525, 527 (9th Cir. 1983).  Rather, they "allow officials

---

[3]Although on brief Anderson uses the language that the waiver "did not have to be related to the supervision of [his] probation" quoted by the majority as a concession by Anderson, a fair reading of that language in context of Anderson's argument does not support the conclusion that it was a concession of anything.  Rather, it was an inartful way of addressing the broad scope of the waiver that unquestioningly was challenged by Anderson.

11

to monitor [a probationer's] activities . . . tied to the rehabilitative purpose of his probationary sentence." Allen v. State, 369 S.E.2d 909, 910 (Ga. 1988). If such were not the case, the generalized inclusion of such language in all plea agreements by the Commonwealth would unquestionably lead to abuse of the waivers by law enforcement officials.

Here, the Commonwealth concedes that the officers did not conduct their search of Anderson with knowledge of the waiver or to assure that Anderson was adhering to the conditions of his suspended sentence. Accordingly, I would hold that the search exceeded the scope of the waiver and was not otherwise founded on voluntary consent or reasonable grounds sufficient to overcome Anderson's Fourth Amendment privilege. For these reasons, I would reverse the judgment of the Court of Appeals.