COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Chafin
Argued at Richmond, Virginia


RONALD STUART MURRY, JR.

OPINION BY
v.      Record No. 0522-12-2      JUDGE TERESA M. CHAFIN
JUNE 25, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Steven D. Benjamin (Betty Layne DesPortes; Benjamin &
DesPortes, on briefs), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Ronald Stuart Murry, Jr., ("Murry") was convicted by the Circuit Court of Hanover

County ("circuit court") of one count of rape in violation of Code § 18.2-61, four counts of

aggravated sexual battery in violation of Code § 18.2-67.3(A)(1), and one count of aggravated

sexual battery in violation of Code § 18.2-67.3(A)(3). On appeal, Murry challenges a condition

of the probation he received as a result of these convictions. Murry argues that the probation

condition subjecting him to suspicionless searches for the remainder of his life is unreasonable in

light of the circumstances of this case.[1] We disagree and affirm the circuit court's decision.

_____

[1] In his brief, Murry also argues that the probation condition subjecting him to
suspicionless searches is unconstitutional. In the circuit court, however, Murry only objected to
the reasonableness of the challenged probation condition in light of the circumstances of the
case. His failure to object based on the alleged unconstitutionality of the condition at trial bars
our consideration of this argument on appeal. See Rule 5A:18. Thus, our review only addresses
whether the challenged probation condition was reasonable in light of the particular
circumstances of this case, and does not address the merits of Murry's argument concerning the
constitutionality of the condition.

I.  Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence establishes that all of the convictions involved in this appeal stem from the reports of one complaining witness:  B.W., Murry's teenage stepdaughter.  Murry lived in Hanover County with B.W., her mother, and her two younger siblings.  Murry first met B.W. when she was three or four years old, and he acted as a father-figure in her life.

When B.W. was five years old, Murry began coming into her bedroom at night once or twice per week and touching her breasts and vagina, both over and under her clothes.  This activity continued until she was thirteen years old.  In October or November 2009, when B.W. was thirteen years old, Murry came into her bedroom one night, removed his and her clothing, and inserted his penis into her vagina.  Although B.W. told Murry to stop, he refused and told her that everything was "okay."  B.W. did not tell anyone about this incident until January 2011, when she told her mother.  When B.W.'s mother confronted Murry, he claimed that B.W. instigated the sexual contact and that the intercourse was consensual.  He then became emotionally distraught and sought in-patient mental health treatment, during the course of which he made several incriminating statements about molesting B.W.

At his trial for rape and aggravated sexual battery, Murry continued to deny that he raped B.W.  Although he admitted that he had sexual intercourse with B.W. when she was thirteen years old, he claimed that B.W. instigated the sexual contact and that the intercourse was consensual.  He claimed that she never told him to stop during the intercourse and that afterward he stayed in her bed for forty-five minutes discussing what was going on at B.W.'s school and

-2-

the day's activities. Murry also denied that he inappropriately touched B.W. on her breasts or vagina when she was between the ages of five and thirteen years old.

The circuit court rejected Murry's testimony, finding it "entirely incredible, and . . . designed to minimize his culpability and to account for the admissions that he made at the hospital . . . ." The circuit court also found that Murry's ongoing sexually abusive relationship with B.W. and his "grooming" behavior likely led to the rape. The circuit court discounted testimony from other individuals concerning the strong, positive relationship between Murry and B.W., stating that Murry "fooled everyone." The circuit court found Murry guilty on all charges, and sentenced him to a term of 156 years and 7 months of incarceration. The circuit court suspended 140 years of Murry's sentence, and thereby imposed an active term of incarceration of 16 years and 7 months.[2]

Over Murry's objection, the circuit court ordered the following condition of his eventual probation: "[Murry] shall submit his person, property, place or residence, vehicle, and personal effects, to search at any time, with or without a search warrant, warrant of arrest or reasonable cause by any Probation Officer or Law Enforcement Officer." The circuit court imposed this condition for the entire period of Murry's suspended sentence, a period effectively equivalent to the rest of his life. Murry objected to this condition, arguing that such a waiver "in this circumstance . . . [is] not really necessarily appropriate . . . ." In overruling Murry's objection to this condition, the circuit court stated:

> I agree with the Commonwealth that [Murry] . . . groomed this
> child from an early age to accept his physical advances and that he
> manipulated her into this at the same time that he was presenting to
> everyone in his family and . . . community what a good person he

---

[2] Specifically, the circuit court sentenced Murry to fifty-six years and seven months of incarceration on his rape conviction and suspended forty years of this sentence. The circuit court sentenced Murry to twenty years of incarceration on each of his aggravated sexual battery convictions, and suspended the full twenty years of each of these sentences.

would be . . . to have with children.  I mean it's classic predatory behavior . . . .  And . . . he does not accept responsibility for that, he exhibits distorted behavior about his own role . . . .  And, in order to protect the community at the time that he's finally released, I want . . . law enforcement to have the ability to go directly into his house at any time to see what he's doing . . . .[3]

## II. Analysis

Probation is "'[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison.'" Word v. Commonwealth, 41 Va. App. 496, 502, 586 S.E.2d 282, 285 (2003) (quoting Black's Law Dictionary 1220 (7th ed. 1999)).  "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" Price v. Commonwealth, 51 Va. App. 443, 448, 658 S.E.2d 700, 703 (2008) (quoting Pierce v. Commonwealth, 48 Va. App. 660, 667, 633 S.E.2d 755, 758 (2006)).  Code § 19.2-303 allows a trial judge to suspend a defendant's sentence following his or her conviction and place that defendant on probation "under such conditions as the court shall determine." Nuckoles v. Commonwealth, 12 Va. App. 1083, 1085, 407 S.E.2d 355, 356 (1991).  The same statute "places wide discretion in the trial court to determine what conditions are to be imposed in each particular case." Id.  Thus, the Court of Appeals "reviews a trial court's decision regarding suspension and probation under an abuse of discretion standard."

---

[3] The circuit court ordered this condition pursuant to United States v. Knights, 534 U.S. 112 (2001).  In Knights, the Supreme Court held that a "warrantless search . . ., supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." Id. at 122.  Similarly, in Samson v. California, 547 U.S. 843 (2006), the Supreme Court upheld a California statute requiring parolees to submit to suspicionless searches as a condition of their parole. See id. at 848-47.  Although we note that the probation condition in the present case authorizes suspicionless searches in addition to searches based on reasonable suspicion and involves probationers rather than parolees, further analysis of Knights and Samson is unnecessary due to Murry's waiver of his constitutional argument pursuant to Rule 5A:18.

Dunham v. Commonwealth, 59 Va. App. 634, 638, 721 S.E.2d 824, 826 (2012) (citation omitted).

The only limitation placed upon a trial court's discretion in its determination of probation conditions is one of reasonableness. Anderson v. Commonwealth, 256 Va. 580, 585, 507 S.E.2d 339, 341 (1998) (citing Dyke v. Commonwealth, 193 Va. 478, 484, 69 S.E.2d 483, 486 (1952)). A condition of probation "'must be reasonable, having due regard to the nature of the offense, the background of the offender[,] and the surrounding circumstances.'" Nuckoles, 12 Va. App. at 1086, 407 S.E.2d at 356 (quoting Loving v. Commonwealth, 206 Va. 924, 930, 147 S.E.2d 78, 83 (1966), rev'd on other grounds, 388 U.S. 1 (1967)); see also Anderson, 256 Va. at 585, 507 S.E.2d at 342. "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." United States v. Knights, 534 U.S. 112, 119 (2001).

"Sex offenders are a serious threat in this Nation." McKune v. Lile, 536 U.S. 24, 32 (2002) (plurality opinion). "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." Id. at 33. "As in the present case, the victims of sexual assault are most often juveniles." Id. at 32. Due to their unique threat to society, sex offender probationers are classified and treated differently than other offenders. Unlike non-sex offender probationers, sex offender probationers are required to publicly register their status with the Sex Offender and Crimes Against Minors Registry "to assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders[,] and to protect children from becoming victims of criminal offenders . . . ." Code § 9.1-900; see also Code § 9.1-903. Moreover, sex offenders are typically subject to additional probation conditions designed to promote their rehabilitation and prevent

their recidivism. These conditions commonly include prohibitions of or limitations on the offender's contact with minors, and requirements that the offender submit to polygraph tests concerning his or her sexual conduct and comply with psychosocial treatment regimens specific to his or her individual background and other characteristics.

Although more commonly encountered in cases when probation is imposed following convictions for contraband offenses (drug offenses, firearm offenses, etc.), see Anderson, 256 Va. at 585, 507 S.E.2d at 342, conditions requiring the waiver of a probationer's Fourth Amendment rights are also proper under certain circumstances in cases involving sex offender probationers.[4] When reasonable in light of the nature and circumstances of the probationer's offense and his or her background, probation conditions requiring Fourth Amendment waivers may be appropriate to ensure the probationer's good behavior, prevent his or her recidivism, and protect the public. Sex offender probationers, like all probationers,

> have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply.

Knights, 534 U.S. at 120 (citation omitted). By eliminating any degree of suspicion required to justify searches, Fourth Amendment waivers may help probation and law enforcement officers discover evidence of a sex offender probationer's recidivism despite his or her efforts to conceal new offenses. Further, by increasing the threat of detection, Fourth Amendment waivers may

---

[4] For cases in which probation conditions requiring the waiver of Fourth Amendment search rights were upheld following sex offense convictions, see, e.g., United States v. Vincent, 167 F.3d 428 (8th Cir. 1999); People v. Wardlow, 278 Cal. Rptr. 1 (Cal. Ct. App. 1991); Greenwood v. State, 754 So. 2d 158 (Fla. Dist. Ct. App. 2000); Carswell v. State, 721 N.E.2d 1255 (Ind. Ct. App. 1999); State v. Lockwood, 632 A.2d 655 (Vt. 1993).

compel sex offender probationers to comply with the terms of their probation and otherwise remain on good behavior for the duration of their suspended sentences.

In the present case, the probation condition requiring Murry to waive his Fourth Amendment search rights is reasonable when viewed in light of the circumstances of this case. Although Murry has no past history of similar criminal behavior, the nature of the offenses and the circumstances surrounding them justify the circuit court's imposition of the challenged probation condition.

The circuit court described Murry as a sexual predator. He engaged in a pattern of long-term sexual abuse of B.W. that culminated in her rape when she was thirteen years old. Murry molested B.W. once or twice per week for eight years. This continuous sexual abuse of B.W. constituted a "grooming" process designed to break down her opposition to Murry's escalating sexual abuse. When Murry eventually raped B.W., he had already abused her hundreds of times over an eight-year period beginning when she was only five years old. Murry told B.W. that the rape was "okay," and B.W. did not tell anyone about it for over a year.

Despite its regular pattern and frequency, Murry successfully concealed his abuse of B.W. for over nine years.[5] Murry successfully concealed his abuse of B.W. from his community, and created the illusion that a positive relationship existed between himself and B.W. More importantly, Murry successfully concealed his abuse of B.W. to the point that he fooled even those who were the closest to her. B.W.'s mother and siblings who lived in the same house with both B.W. and Murry were unaware of the abuse. Several other family members testified that Murry had a positive relationship with B.W. and that he was a devoted father to her.

---

[5] Although Murry abused B.W. for an eight-year period, the abuse stopped after her rape. Murry continued to conceal his abusive relationship with B.W. for an additional year after the abuse stopped, until B.W. told her mother about the rape and the abuse was reported to the police.

The pattern of Murry's sexual abuse of B.W. and his ability to successfully conceal that abuse demonstrate the need for his increased supervision upon his release from incarceration. Although Murry was evaluated as posing a relatively low threat of recidivism for a sex offender, the circuit court could reasonably be concerned about his possible recidivism given the particular details of his offenses. See McKune, 536 U.S. at 32-33 (sex offenders have a high rate of recidivism). Murry molested a child hundreds of times over an eight-year period, "grooming" her to accept future sexual abuse without opposition. At trial, Murry refused to take responsibility for his actions, denying any abuse prior to B.W.'s rape and claiming that his intercourse with the thirteen year old was instigated by her and was consensual. This manipulative and consistent abuse, coupled with Murry's refusal to take responsibility for his actions, could reasonably lead the circuit court to conclude that Murry might reoffend. The probation condition subjecting Murry to suspicionless searches may facilitate the discovery of evidence of similar crimes or other related probation violations should Murry reoffend in the future.

The challenged probation condition is increasingly important given Murry's ability to successfully conceal his offenses for long periods of time. In the present case, Murry concealed his sexual abuse of B.W. from her family and the community for an extended period. Although he will be under increased scrutiny due to his status as a sex offender and the additional probation conditions triggered by that status, it was not unreasonable for the circuit court to conclude that Murry could possibly elude this scrutiny if he reoffends in the future. Under such circumstances, there would be little evidence of Murry's new sexual abuse to support a search based on probable cause or reasonable suspicion. The probation condition requiring Murry to waive his Fourth Amendment rights and submit to suspicionless searches is the direct result of

the circuit court's concern that Murry will reoffend and conceal his new offenses, and this concern is supported by the facts of this case.

Although a probation condition requiring the waiver of a probationer's Fourth Amendment search rights may not be appropriate in every case involving a sex offender, such a condition is reasonable under the circumstances presented by this particular case. The probation condition requiring Murry to submit to searches by probation and law enforcement officers with or without reasonable suspicion facilitates his increased supervision, and thereby protects the public by ensuring that he complies with the conditions of his probation and remains on good behavior for the term of his suspended sentence. If Murry reoffends, the challenged condition will allow probation and law enforcement officers to search Murry and, possibly, to obtain evidence of crimes that might otherwise have gone undetected. The challenged condition is reasonable under the facts of this case, and the circuit court did not abuse its discretion by ordering it.

Though we agree with the circuit court's decision concerning the challenged probation condition, we remand this case for the correction of a scrivener's error in Murry's sentencing order pursuant to Code § 8.01-428(B).[6] Murry's sentencing order references the incorrect statute concerning his rape conviction. The first page of Murry's sentencing order states that he was convicted in Case Number CR11000450(00) of rape by force or intimidation in violation of Code § 18.2-261.[7] However, Murry was indicted and convicted of rape by force or intimidation in violation of Code § 18.2-61. Accordingly, we remand this case for the correction of this error.

<u>Affirmed and remanded.</u>

---

[6] Code § 8.01-428(B) allows the circuit court to correct "clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission . . . ."

[7] Code § 18.2-261 imposes a monetary penalty on pharmacists licensed by the State Board of Pharmacy who violate the Drug Control Act (Code § 54.1-3400 et seq.).

-9-