Present:  All the Justices

RONALD STUART MURRY, JR.

                                            OPINION BY
v.    Record No. 131137    CHIEF JUSTICE CYNTHIA D. KINSER
                                          SEPTEMBER 12, 2014
COMMONWEALTH OF VIRGINIA

              FROM THE COURT OF APPEALS OF VIRGINIA

     The defendant, Ronald Stuart Murry, Jr., is subject to a

probation condition requiring him to submit to warrantless,

suspicionless searches of his person, property, residence, and

vehicle at any time by any probation or law enforcement officer.

The probation condition is not reasonable in light of the

offenses for which Murry was convicted, his background, and the

surrounding circumstances.  We will therefore reverse the

judgment of the Court of Appeals of Virginia.

                   RELEVANT FACTS AND PROCEEDINGS

     In a bench trial in the Circuit Court of Hanover County,

Murry was convicted of rape, in violation of Code § 18.2-61;[1]

four counts of aggravated sexual battery, in violation of Code

§ 18.2-67.3(A)(1); and one count of aggravated sexual battery,

in violation of Code § 18.2-67.3(A)(3).  The victim, B.W., was

Murry's stepdaughter.  At trial, she testified about sexual

abuse starting at the age of five and culminating in rape after

she reached the age of 13.  Murry denied the allegations of

---

[1] The sentencing order contains a clerical mistake.  It
lists the Code section for rape as Code § 18.2-261 instead of
Code § 18.2-61.

sexual battery but admitted to having sexual intercourse with B.W. when she was 13 years old. He claimed, however, that the intercourse was not against B.W.'s will and that he did not use any threats, force, or intimidation against her. The circuit court rejected Murry's testimony, finding it to be "incredible" and concluding that the "ongoing relationship and the grooming behavior . . . he encouraged from the time she was five years old [was] a much more credible explanation for how [the rape] occurred when she was thirteen."

At sentencing, the circuit court imposed terms of incarceration for each of the convictions, totaling 156 years and 7 months.[2] The court suspended 140 years of the sentences for the period of Murry's "natural life," leaving a term of active incarceration of 16 years and 7 months. The court further ordered that upon release from incarceration, Murry would be on supervised probation for an indefinite period. As a condition of Murry's probation, the court ordered, inter alia, that Murry "shall submit his person, property, place or residence, vehicle, and personal effects, to search at any time, with or without a search warrant, warrant of arrest or

---

[2] The sentencing order has an additional clerical mistake. In the sentencing summary, it recites the total sentence imposed as 156 "dollars" and 7 months instead of 156 "years" and 7 months.

reasonable cause by any Probation Officer or Law Enforcement Officer."

Murry objected to this probation condition, arguing that the Fourth Amendment waiver was "not really necessarily appropriate" because the convictions did not involve illegal substances or firearms. The circuit court overruled the objection, stating:

> I agree with the Commonwealth that [Murry] groomed this child from an early age to accept his physical advances and that he manipulated her into this at the same time that he was presenting to everyone in his family and everyone in the community what a good person he would be . . . to have with children. I mean it's classic predatory behavior . . . . And, even at this point . . . , he does not accept responsibility for that, he exhibits distorted behavior about his own role in this . . . . And, in order to protect the community at the time that he's finally released, I want . . . law enforcement to have the ability to go directly into his house at any time to see what he's doing.

On appeal to the Court of Appeals of Virginia, Murry challenged the probation condition requiring waiver of his Fourth Amendment rights. Murry v. Commonwealth, 62 Va. App. 179, 181, 743 S.E.2d 302, 303 (2013). The Court of Appeals affirmed the circuit court's judgment, concluding that the challenged probation condition "is reasonable under the facts of this case." Id. at 189, 743 S.E.2d at 307.

We awarded Murry this appeal. As he argued in the Court of Appeals, Murry asserts that the condition of probation requiring

3

him to submit to searches of his person, property, residence, and vehicle at any time by any probation or law enforcement officer with or without a search warrant or reasonable cause throughout the term of his probation is both unreasonable under Virginia law and unconstitutional under the Fourth Amendment.

ANALYSIS

We review conditions of probation imposed by a trial court as part of its sentencing determination for abuse of discretion. Martin v. Commonwealth, 274 Va. 733, 735, 652 S.E.2d 109, 111 (2007). A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (internal quotation marks omitted); see also Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.") (internal quotation marks omitted).

Probation is a form of criminal sanction, like incarceration, imposed by a trial court after a verdict,

4

finding, or plea of guilty. Griffin v. Wisconsin, 483 U.S. 868, 874 (1987). Pursuant to Code § 19.2-303, "[a]fter conviction, whether with or without jury, the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." This statute authorizes a trial court to impose such reasonable terms and conditions of probation as it deems appropriate. Dyke v. Commonwealth, 193 Va. 478, 484, 69 S.E.2d 483, 486 (1952) (decided under predecessor statute, former Code § 53-272). The only statutory limitation on the court's exercise of its discretion is "one of reasonableness." Anderson v. Commonwealth, 256 Va. 580, 585, 507 S.E.2d 339, 341 (1998). Probation conditions must be reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances. Id. at 585, 507 S.E.2d at 342; see also State v. Allah, 750 S.E.2d 903, 911 (N.C. Ct. App. 2013) (discussing that probation conditions must bear a reasonable relationship to the offenses committed by the defendant, tend to reduce the defendant's exposure to crime, and assist in the defendant's rehabilitation) (citing State v. Cooper, 282 S.E.2d 436, 438 (N.C. 1981)); Jones v. State, 41 P.3d 1247, 1258 (Wyo. 2002) (holding that "probation conditions must be reasonably related to rehabilitation, to the criminal conduct for which the

5

probationer was convicted, and to the deterrence of future criminal conduct").

Murry argues that the circuit court abused its discretion because the probation condition is not reasonably related to the offenses for which he was convicted, his background, or any surrounding circumstances and amounts to a "lifetime waiver" of his Fourth Amendment protection against unreasonable searches and seizures.[3] The Commonwealth responds that the probation condition is reasonable in light of the circuit court's findings that Murry groomed his victim from an early age, was able to conceal his reprehensible conduct from his family and the community, and never accepted responsibility for his behavior. According to the Commonwealth, the probation condition is

---

[3] The Court of Appeals concluded that in the circuit court Murry only objected to the reasonableness of the probation condition at issue and did not assert that the condition was unconstitutional. Murry, 62 Va. App. at 181 n.1, 743 S.E.2d at 303-04 n.1. Thus, pursuant to Rule 5A:18, the Court of Appeals did not address the merits of that argument. Id. Murry now also challenges the Court of Appeals' failure to address the constitutionality of the probation condition.

In ruling on Murry's objection to the required waiver of his Fourth Amendment rights, the circuit court referenced the decision in United States v. Knights, 534 U.S. 112 (2001). The court thus understood Murry's argument and ruled on it. See Scialdone v. Commonwealth, 279 Va. 422, 442, 689 S.E.2d 716, 727 (2010) (holding that trial court was aware of defendants' arguments and ruled on them). We therefore conclude that the Court of Appeals erred in refusing to address the constitutional challenge to the probation condition. Although we do not need to specifically address whether the probation condition violates Murry's Fourth Amendment rights, Fourth Amendment principles are, nevertheless, relevant to determine if the probation condition is reasonable under our jurisprudence.

necessary to verify Murry's compliance with other probation conditions and to protect the public. Because the probation condition here implicates Murry's Fourth Amendment rights, to determine whether it is reasonable we must measure Murry's privacy interests against the Commonwealth's interests in imposing the condition in light of Murry's offenses, his background, and the surrounding circumstances. See Carswell v. State, 721 N.E.2d 1255, 1258 (Ind. Ct. App. 1999) (holding that when a defendant contends that a probation condition is "unduly intrusive on a constitutional right," a review of the condition must balance the constitutional rights enjoyed by the probationer and the legitimate needs of law enforcement); Jones, 41 P.3d at 1258 (determining the reasonableness of a probation condition waiving Fourth Amendment rights "requires a balancing of the interests of the state and the privacy interests of the probationer").

Probation is "one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." Griffin, 483 U.S. at 874. "Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled,'" United States v. Knights, 534 U.S. 112, 119 (2001) (quoting Griffin, 483 U.S. at 874), "but only . . . conditional liberty properly

dependent on observance of special [probation conditions]." Morrissey v. Brewer, 408 U.S. 471, 480 (1972). Because "[a] [s]tate's operation of a probation system . . . presents 'special needs' beyond normal law enforcement" to ensure that probation restrictions are followed, "departures from the usual warrant and probable-cause requirements" for searches may be justified. Griffin, 483 U.S. at 873-74. The permissible range of departure, however, "is not unlimited." Id. at 875.

In Knights, the Supreme Court of the United States determined the reasonableness of a search of a probationer by balancing "'on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" 534 U.S. at 119 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)); see also New Jersey v. T.L.O., 469 U.S. 325, 337 (1985) (determining reasonableness of a search requires "balancing the need to search against the invasion which the search entails") (internal quotation marks omitted). There, the probationer was subject to a probation condition that was virtually identical to the Fourth Amendment waiver required of Murry. Knights, 534 U.S. at 114. In addition, the probationer had signed a probation order that stated the following above his signature: "I RECEIVED A COPY, READ AND UNDERSTAND THE ABOVE

8

TERMS AND CONDITIONS OF PROBATION AND AGREE TO ABIDE BY SAME." Id. The defendant subsequently challenged the legality of a search conducted pursuant to the probation condition. Id. at 116.

The Court concluded that the probationer's acceptance of the clear and unambiguous probation condition "significantly diminished" his reasonable expectation of privacy. Id. at 119-20. Weighing that fact against the government's legitimate interests with regard to probation, the Court held that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of [the] probationer's house." Id. at 121. The Court concluded that "the warrantless search of [the probationer], supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment."[4] Id. at 122; see also United States v. Davis, 932 F.2d 752, 755-58 (9th Cir. 1991) (holding that, where the defendant "was on probation and subject to a search condition permitting the warrantless search of her apartment," law enforcement officers must have, at a minimum, "reasonable suspicion[] that an item to be searched is owned, controlled, or possessed by [the] probationer, in

---

[4] The trial court found and the probationer conceded that the law enforcement officer who conducted the search had "reasonable suspicion" that the probationer was engaged in criminal activity. Knights, 534 U.S. at 122.

9

order for the item to fall within the permissible bounds of [a] probation search"); Carswell, 721 N.E.2d at 1262 (upholding a probation condition authorizing warrantless searches of the defendant, provided the searches are "conducted only upon reasonable cause"); State v. Lockwood, 632 A.2d 655, 662 (Vt. 1993) (holding that, although the probation condition authorizing warrantless searches without reasonable cause was flawed, the search at issue was upheld "because the officers had reasonable suspicion to conduct the search"). But see Samson v. California, 547 U.S. 843, 857 (2006) (holding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee").

The Court did not address "whether the probation condition so diminished, or completely eliminated, [the probationer's] reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." 534 U.S. at 120 n.6; see also Samson, 547 U.S. at 849 (explaining that "[b]ecause the search at issue in Knights was predicated on both the probation search condition and reasonable suspicion, [the Court] did not reach the question whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of

probation"). Neither did the Court address whether the probation condition itself violated the Fourth Amendment.

Murry, however, is challenging the reasonableness of the probation condition. In contrast to the defendant in Knights, he is not challenging the legality of an actual search. As we already stated, the balancing test used in Knights and other cases is, nevertheless, the appropriate framework to address the reasonableness of the probation condition because it affects Murry's Fourth Amendment rights. See Carswell, 721 N.E.2d at 1258 (when a defendant contends that a probation condition is "unduly intrusive on a constitutional right," a review of the condition must balance the constitutional rights enjoyed by the probationer and the legitimate needs of law enforcement); State v. Bennett, 200 P.3d 455, 463 (Kan. 2009) (balancing probationer's expectation of privacy against state's legitimate interests to decide whether probation condition authorizing suspicionless searches violated probationer's Fourth Amendment rights); Jones, 41 P.3d at 1258 (determining the reasonableness of a probation condition waiving Fourth Amendment rights "requires a balancing of the interests of the state and the privacy interests of the probationer"). Murry's future status as a probationer "informs both sides of that balance." Knights, 534 U.S. at 119.

11

On Murry's side of the balance, it is apparent from the decision in Knights that probationers retain some expectation of privacy, albeit diminished.  See id. at 121 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.") (emphasis added); see also Samson, 547 U.S. at 850-52 & n.2 (explaining that parolees have fewer expectations of privacy than probationers and that, in Knights, the probationer's acceptance of the probation condition there significantly diminished his expectation of privacy); Griffin, 483 U.S. at 875 ("Supervision . . . is a 'special need' of the [s]tate permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited, however."); United States v. Stewart, 468 F.Supp.2d 261, 278 (D. Mass. 2007) ("[T]here must be some privacy rights that a probationer retains and from which he can exclude the government unless it comes armed with a warrant or individualized suspicion."); People v. Johns, 795 N.E.2d 433, 437 (Ill. App. Ct. 2003) (explaining that a probationer's expectation of privacy is diminished but not extinguished); Bennett, 200 P.3d at 463 ("[A]lthough probationers' privacy rights are more limited than are the

12

rights of free citizens, probationers do enjoy some expectation of privacy in their persons and property."); People v. Hale, 714 N.E.2d 861, 863 (N.Y. 1999) ("[A] probationer loses some privacy expectations and some of the protections of the Fourth Amendment, but not all of both.").

The probation condition challenged in this appeal subjects Murry to searches of his person, property, residence, and vehicle at any time by any probation or law enforcement officer. Neither a search warrant nor even reasonable cause is required. Furthermore, the probation condition not only authorizes suspicionless searches but also allows such searches for both probation and investigative purposes.[5] See Hale, 714 N.E.2d at 862, 865 (upholding search conducted pursuant to a probation condition that allowed only searches for specific items by probation officers). There is no question that the degree of intrusion on Murry's expectation of privacy as a probationer is

_____

[5] In determining the reasonableness of suspicionless searches authorized by probation conditions, courts have distinguished between searches conducted for probationary purposes and those conducted for investigative purposes. The former "must be related to the rehabilitation or supervision of the defendant," State v. Zeta Chi Fraternity, 696 A.2d 530, 541 (N.H. 1997), and "should advance the goals of probation, the overriding aim of which is to give the [probationer] a chance to further and to demonstrate his rehabilitation while serving a part of his sentence outside the prison walls." United States v. Ooley, 116 F.3d 370, 372 (9th Cir. 1997) (internal quotation marks omitted). The latter serves as "a mere subterfuge enabling the police to avoid having to obtain a search warrant." Id. (internal quotation marks omitted).

significant. In reality, it extinguishes any Fourth Amendment rights Murry may have as a probationer.

On the other side of the balance, the Commonwealth has the expectation that a probationer will successfully complete the term of probation and be integrated back into society as a productive, law-abiding person. See Knights, 534 U.S. at 120-21; see also Wilborn v. Saunders, 170 Va. 153, 160, 195 S.E. 723, 726 (1938) ("The Commonwealth is interested not only in the preservation of peace and good order, but in reformation of the criminal, so that he may be restored to a useful place in society and be self-sustaining thereafter."). At the same time, the Commonwealth has the legitimate concern that a probationer is more likely to engage in criminal activities than an ordinary citizen. Knights, 534 U.S. at 121. This concern is heightened when, as here, a probationer is a sex offender. See United States v. Yuknavich, 419 F.3d 1302, 1310 (11th Cir. 2005) (recognizing that sex offenders are a serious threat and that states have a vital interest in rehabilitating them); Carswell, 721 N.E.2d at 1263 (recognizing elevated public safety concerns with "the crime of child molestation," which all too often goes unreported). "[T]he very assumption of the institution of probation [is] that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law." Griffin, 483 U.S. at 880. Thus, probation conditions and

14

supervision are necessary to ensure both that probation "serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large."  Id. at 875.

The circuit court convicted Murry of rape and several counts of aggravated sexual battery.  The victim, a family member, was between the ages of five and 13 at the time of the offenses.  Although Murry had no prior convictions, the circuit court imposed the probation condition because it concluded that Murry had groomed his victim from an early age and had successfully concealed his behavior from his family and the community for many years.  As a result, the court wanted "law enforcement to have the ability to go directly into [Murry's] house at any time to see what he's doing."

Although the Commonwealth has a legitimate interest in ensuring that Murry completes a meaningful period of rehabilitation and that society not be harmed by Murry's being at large as a sex offender, we conclude that those interests do not justify the total surrender of Murry's Fourth Amendment rights.  See State v. Fields, 686 P.2d 1379, 1387-88 (Haw. 1984) ("[A] near-total surrender of privacy could [not] be reasonably related to rehabilitation, and . . . the deprivation would be inconsistent with even the limited freedom afforded someone who but for the grace of the sentencing court would be in prison."); Bennett, 200 P.3d at 463 (holding that a probation

15

condition requiring defendant to submit to nonconsensual, suspicionless searches violated his Fourth Amendment rights). Nothing in the record establishes that a complete waiver of Murry's Fourth Amendment rights is necessary to facilitate his rehabilitation and protect the public.

Furthermore, the probation condition authorizes any law enforcement officer, even one without knowledge of the condition, to search Murry's person, property, residence, and vehicle at any time and for any reason. In other words, the condition enables a law enforcement officer to avoid the warrant requirement, or even having reasonable suspicion, for a purely investigative search. Law enforcement officers, however, do not have the same responsibility as probation officers with respect to rehabilitating probationers. Compare Code § 53.1-145 (powers and duties of probation and parole officers) with Code § 15.2-1704 (powers and duties of police officers); see also State v. Zeta Chi Fraternity, 696 A.2d 530, 541 (N.H. 1997) (probation officers, unlike law enforcement officers, are charged with assisting probationers "in establishing law-abiding lives while monitoring their behavior"). The probation condition, therefore, could sanction intimidating and harassing searches that are unrelated to Murry's rehabilitation or public safety, thus undermining the purpose of probation conditions.

16

Relying on this Court's decision in <u>Anderson</u>, the Commonwealth, however, questions how Murry can contend that the probation condition is unreasonable under the Fourth Amendment when he accepted the circuit court's suspension of part of his sentence. The Commonwealth's argument overlooks significant factual differences between <u>Anderson</u> and the present case.

The defendant in <u>Anderson</u> pled guilty pursuant to a written plea agreement. 256 Va. at 582, 507 S.E.2d at 340. The plea agreement provided that the defendant's sentence would be suspended upon certain terms and conditions, including a waiver of the defendant's Fourth Amendment right against unreasonable searches and seizures for one year from the date of sentencing. <u>Id.</u> The plea agreement stated:

> BY HIS SIGNATURE BELOW, [THE DEFENDANT] ACKNOWLEDGES THAT, IF THIS AGREEMENT IS ACCEPTED BY THE COURT, HE UNDERSTANDS HE IS WAIVING HIS FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES DURING THE PERIOD SPECIFIED ABOVE.

<u>Id.</u> at 582-83, 507 S.E.2d at 340. The trial court found that the defendant had entered his plea freely and voluntarily and incorporated the terms of the plea agreement into the sentencing order. <u>Id.</u> at 583, 507 S.E.2d at 340.

Approximately five months after sentencing, police officers searched the defendant and found cocaine, marijuana, and a handgun. <u>Id.</u> at 583-84, 507 S.E.2d at 340-41. After being charged with various felonies, the defendant moved to suppress

17

the evidence recovered from the search, contending that the Fourth Amendment waiver in his plea agreement was invalid and that the officers had no grounds otherwise to support a warrantless search. Id. at 584, 507 S.E.2d at 341. On appeal, the defendant asserted, inter alia, that conditioning the suspended sentence upon a waiver of Fourth Amendment rights was unreasonable. We disagreed, stating "it is difficult to understand how [the defendant] can now contend that this condition of his suspended sentence was unreasonable when he knowingly and voluntarily agreed to it." Id. at 585, 507 S.E.2d at 342.

The waiver of constitutional rights in a plea agreement is not an uncommon practice. See United States v. Keele, ___ F.3d ___, 2014 U.S. App. LEXIS 10183, at *10 (5th Cir. June 2, 2014) ("Generally, constitutional rights can be waived as part of a plea agreement."); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999) (same). "[I]t is well settled that plea bargaining does not violate the Constitution even though a guilty plea waives important constitutional rights." Town of Newton v. Rumery, 480 U.S. 386, 393 (1987); Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (discussing standards for waiver of such constitutional rights as the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront accusers). Nor is it uncommon for defendants to agree

18

to search conditions of probation in exchange for a more lenient term of incarceration, as in Anderson. See United States v. King, 711 F.3d 986, 990-91 (9th Cir. 2013) (upholding a search where "the probationer agreed to a search condition that permits warrantless, suspicionless searches of the probationer's 'person, property, premises and vehicle[] [at] any time of the day or night'"). However, unlike the defendant in Anderson, Murry did not agree to a waiver of his Fourth Amendment rights pursuant to a signed plea agreement. Murry pled not guilty, and the circuit court imposed the probation condition, sua sponte, after finding Murry guilty. Murry objected to the probation condition in the circuit court and is likewise doing so on appeal. Furthermore, Murry is not yet on probation and has not signed any document agreeing to terms of probation. But see King, 711 F.3d at 990-91. Murry clearly has not consented to the probation condition at issue here.

CONCLUSION

In summary, the probation condition subjecting Murry, his property, residence, and vehicle to warrantless, suspicionless searches at any time by any probation or law enforcement officer is not reasonable in light of Murry's offenses, his background, and the surrounding circumstances. The degree to which the probation condition is needed to promote the Commonwealth's legitimate interests with regard to Murry's rehabilitation and

19

the protection of society does not outweigh the degree of intrusion on Murry's diminished yet legitimate expectation of privacy as a probationer.  Therefore, the circuit court abused its discretion because in weighing the relevant factors, it committed "a clear error of judgment."  Landrum, 282 Va. at 352, 717 S.E.2d at 137 (internal quotation marks omitted).  We will reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals with directions that it remand the case to the circuit court to conduct a new sentencing hearing.

Reversed and remanded.

JUSTICE MIMS, concurring.

The circuit court was motivated by a genuine concern that Murry will pose a danger to public safety upon release.  It therefore imposed several probation conditions to ameliorate that concern.  I concur that the circuit court abused its discretion by requiring Murry to "submit his person, property, place or residence, vehicle, and personal effects, to search at any time, with or without . . . reasonable cause by any Probation Officer or Law Enforcement Officer."  Although the underlying concern is justified, this condition is too broad.  I write separately to consider this condition in context with the others, rather than in isolation.

The circuit court found that Murry raped his stepdaughter when she was 13.  It found that he had committed repeated

20

aggravated sexual batteries upon her since she was five years old. It found the aggravated sexual batteries constituted "grooming behavior" and facilitated the rape. It found that Murry successfully concealed this sexual abuse for many years. It found that he failed to accept responsibility for his crimes upon conviction.

Based on these offenses, background, and surrounding circumstances, Anderson v. Commonwealth, 256 Va. 580, 585, 507 S.E.2d 339, 341 (1998), the court imposed a probation condition prohibiting Murry from having "contact with any minors under the age of eighteen without adult supervision." Murry does not challenge the reasonableness of this condition.

Probation conditions "are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that" a probationer complies with the conditions after release. Griffin v. Wisconsin, 483 U.S. 868, 875 (1987) (citation omitted). Accordingly, Virginia probation officers have a duty to ensure that probationers comply with their probation conditions. See Code § 53.1-145 (requiring probation officers to "furnish every such person with a written statement of the conditions of his probation and instruct him therein" and

to "[a]rrest [probationers] for violation of the terms of probation").

While probation officers may attempt to ascertain whether a probationer is complying with his probation conditions after release by questioning him and his family, friends, neighbors, co-workers, and other associates, "[i]nvestigation of [his] home, possessions, and body may also be required.  In such situations, . . . probation officers believe that they need to be able to make unannounced home visits and searches."  Neil P. Cohen, The Law of Probation and Parole § 17:7 (2d ed. 1999). Accordingly, the authority to do so is often included as a separate condition of release.  Id.

In this case, the circuit court could reasonably fear that the customary investigative technique of interviewing Murry and his associates would be insufficient to reveal any violation of the condition prohibiting him from unsupervised contact with minors.  Probationers in general have a propensity to "to conceal their criminal activities and quickly dispose of incriminating evidence."  United States v. Knights, 534 U.S. 112, 120 (2001).  The court's findings suggest that Murry could be particularly adept at doing so.  It found that he concealed his repeated aggravated sexual batteries for years.  It was especially disturbed by his ability to persuade his family and others in the community who knew him that he was "a good person

22

. . . to have with children" at the same time he was sexually abusing his stepdaughter.  Consequently, the circuit court's findings are sufficient to establish the need for a separate search condition in this case.

Nevertheless, such a condition must be reasonable not only in its justification but in its scope.  For example, former N.C. Gen. Stat. § 15A-1343(b1)(7) permitted North Carolina courts to require a probationer to submit to warrantless searches by a probation officer of his home, vehicle, and person "at reasonable times . . . while the probationer is present, for purposes specified by the court and reasonably related to his or her probation supervision, but the probationer may not be required to submit to any other search that would otherwise be unlawful."[1]  The United States Court of Appeals for the Fourth Circuit upheld this condition, ruling that "[t]hese criteria impose meaningful restrictions, guaranteeing that the searches are justified by the State's 'special needs,' not merely its interest in law enforcement."  United States v. Midgette, 478 F.3d 616, 624 (4th Cir.), cert. denied, 551 U.S. 1157 (2007).

The court also rejected the argument that the condition was defective because it did not require individualized suspicion that the probationer possessed contraband.  The court noted that

---

[1] The North Carolina General Assembly amended the statute in 2009, making this condition mandatory for all probationers rather than discretionary.  2009 N.C. Sess. Laws 372.

23

the Supreme Court of the United States has upheld suspicionless searches in furtherance of a special need when the search was reasonably tailored.  Id. (citing Board of Educ. v. Earls, 536 U.S. 822 (2001) (upholding suspicionless drug testing of students involved in extracurricular activities); Michigan Dep't of State Police v. Sitz, 496 U.S. 444 (1990) (affirming suspicionless sobriety checks of motorists in order to reduce the safety hazards posed by drunk drivers); Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989) (upholding suspicionless urine and blood tests of certain railroad employees); Bell v. Wolfish, 441 U.S. 520 (1979) (upholding suspicionless visual body-cavity searches of detainees following contact visits)).  Thus, a search condition need not be predicated on individualized suspicion when a special need "justifie[s] the 'degree of impingement upon privacy' authorized by" the condition.  Id.

As noted above, the circuit court's particularized findings in this case (specifically Murry's ability to conceal his sexual crimes against his stepdaughter from his family and associates for several years) could lead the court reasonably to conclude that suspicionless searches are necessary to ensure Murry's compliance with the unchallenged condition prohibiting his unsupervised contact with minors.  If it were to do so on remand, it might determine that former N.C. Gen. Stat. § 15A-

24

1343(b1)(7) provided a roadmap for imposing a constitutionally tailored search condition.[2]

Finally, I emphasize that a criminal defendant has no right to suspension of any part of the sentence imposed by the trial court. As the majority notes, Code § 19.2-303 permits that "[a]fter conviction, whether with or without jury, the court _may_ suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." (Emphasis added.)

Accordingly, while a defendant may appeal a probation condition on the grounds that it is unreasonable, Anderson, 256 Va. at 585, 507 S.E.2d at 341, nothing prevents a trial court from declining to suspend any part of a valid sentence in the first place (thereby requiring the defendant to serve the entire

_____

[2] The probation condition set out in former N.C. Gen. Stat. § 15A-1343(b1)(7) did not require probationers to submit to searches of their personal effects. However, predatory adults often use mobile phones for illicit contact with minors. E.g., Klewer v. Commonwealth, Record No. 0791-11-3, 2012 Va. App. LEXIS 315, at *5-6 (Oct. 9, 2012) (unpublished) (upholding the conviction for electronic solicitation of a minor, in violation of Code § 18.2-374.3(C), of teacher who exchanged text messages, photographs, and videos with a minor former student by mobile phone). Following the Supreme Court's holding in Riley v. California, 573 U.S. ___, ___, 134 S.Ct. 2473, 2485 (2014), that officers must generally secure a warrant before conducting such a search of mobile phone data, it may not be unreasonable to require that a probationer subject to a condition prohibiting unsupervised contact with minors submit to searches of mobile phones and similar devices to ensure that they have not been used to facilitate the proscribed contact.

term in confinement) if it determines that no reasonable conditions would make suspension "compatible with the public interest." See Griffin v. Cunningham, 205 Va. 349, 354, 136 S.E.2d 840, 844 (1964).


JUSTICE McCLANAHAN, dissenting.

I dissent for the reasons stated in the Court of Appeals opinion, Murry v. Commonwealth, 62 Va. App. 179, 743 S.E.2d 302 (2013).