COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Malveaux
Argued by teleconference

UNPUBLISHED

AL MARTINO WILLIAMS

MEMORANDUM OPINION[*] BY
v.      Record No. 0811-19-2      JUDGE MARY BENNETT MALVEAUX
JUNE 2, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LUNENBURG COUNTY
S. Anderson Nelson, Judge

Buddy A. Ward, Public Defender (Sandra Saseen-Smith, Deputy
Public Defender, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Al Martino Williams ("appellant") was convicted of possession of a firearm by a convicted

violent felon, in violation of Code § 18.2-308.2(A), possession with the intent to distribute a

controlled substance, third offense, in violation of Code § 18.2-248(C), possession with the intent to

distribute marijuana, in violation of Code § 18.2-248.1(a)(2), and possession of a firearm while in

possession of a controlled substance, in violation of Code § 18.2-308.4(A). On appeal, he argues

that the trial court erred in denying his motion to suppress evidence found as a result of a search of

his residence on the grounds that the officers seized the evidence in violation of his Fourth

Amendment rights. For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Deputy Christopher Wallace of the Lunenburg County Sheriff's Office received information that there was "heavy traffic coming in and out of" appellant's residence.[1] Wallace was working with the Tri-County Drug and Gang Task Force when he received this information. After reviewing court records, Wallace determined that appellant had entered into "a Fourth Amendment waiver" pursuant to a September 16, 2008 sentencing order from the Circuit Court of Lunenburg County.

The Commonwealth introduced the September 16, 2008 sentencing order into evidence at trial.[2] The order reflected that appellant had been convicted of four counts of distribution of a controlled substance, in violation of Code § 18.2-248(C), and sentenced to a total active sentence of seven years' incarceration with seventy-three years suspended. It stated that the court had "[s]entence[d] [appellant] according to the plea agreement."[3] The order also included a section titled "Search and Seizure" that provided as follows:

> Commencing upon his release [appellant] will allow law enforcement officers to search his residence and curtilage, and stop and search any motor vehicles and his person at any time and will permit the seizure of any illegal substances or evidence of any crime. Law enforcement will limit such requests to Six (6) times per year for Five (5) years.

Deputy Wallace testified that he "believe[d]" appellant had been released from incarceration "sometime in December of 2014."

---

[1] While Deputy Wallace testified that "concerned citizens had contacted us" to "look into" the people coming in and out of appellant's residence, he later clarified on cross-examination that the only source of this information was a single anonymous letter sent to the sheriff.

[2] Prior to trial, appellant filed a motion to suppress, arguing that the search of his person and premises was unlawful. The trial court heard the evidence in relation to the suppression motion and trial purposes at the same time.

[3] The Commonwealth did not introduce a copy of the plea agreement entered in the case.

Wallace testified that he had not previously investigated appellant. He further stated that he had not seen appellant since 2016 when appellant's son was killed. He stated that if a search had been done on appellant's home by the Lunenburg County Sheriff's Office, it would have been recorded by that office. Wallace admitted that prior to the search he had not had any conversations with any other law enforcement agencies to check whether they had any open investigations on appellant. He testified that he did not know whether the FBI, ATF, state police, a multi-jurisdictional task force, or an out-of-state law enforcement agency had conducted a Fourth Amendment waiver search of appellant's residence as there was "no database for that purpose." Wallace did note that there was a "state reporting system" which would indicate if there had been "[a] case made" against appellant.

Relying on the Fourth Amendment waiver contained in the September 16, 2008 sentencing order, Deputy Wallace and other officers conducted a search of appellant's residence on March 9, 2019. Wallace had not obtained a search warrant prior to the search of the home. Wallace approached the residence and pushed open the door, which was "cracked open," and he saw appellant and his son in the kitchen. Wallace told appellant that he and other officers "were there to conduct a Fourth Amendment search of his house" and gave appellant a copy of the September 16, 2008 court order. Appellant did not try to prevent the search after being informed that the search was being conducted pursuant to the waiver contained in the sentencing order.

During the search of appellant's home, Deputy Wallace found a bag of powder cocaine and a bag of cocaine rocks inside a cereal box sitting on the kitchen counter. Officers also found plastic bags containing marijuana, a handgun, $1,887 in currency, and a set of scales.

Special Agent Jason Lacks of the Virginia State Police was also present during the search of appellant's home. While at the residence, Lacks advised appellant of his Miranda[4] rights.

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

Before Lacks started to question appellant, appellant told Lacks that "[i]t's all mine" and that his son "had nothing to do with it." Appellant asked Lacks what items he had found. Lacks told him that he had found a gun, cocaine, scales, and marijuana. Appellant again stated, "It's all mine." Appellant also admitted to Wallace "that he had just cooked" crack cocaine prior to the officers' arrival.

Following the Commonwealth's case-in-chief, the parties presented argument on appellant's motion to suppress. Appellant asserted that the search of his residence violated the Fourth Amendment, because his Fourth Amendment waiver was limited to six searches per year for five years following his release from incarceration, and there was no evidence that this limit had not been reached prior to the March 9, 2019 search. In response, the trial court stated, "I thought [Deputy Wallace] said they checked, and it said they had not -- the task force had not. He said there was no database to go to to confirm that." Counsel for appellant replied, "Correct. . . . The first part of the paragraph says, [']Will allow law enforcement officers.['] It doesn't limit it [to] Lunenburg or task force or localities. And [Deputy Wallace] specifically said, I don't know whether or not there were any other investigations, whether or not there was a federal search . . . ."

The trial court denied the motion to strike, finding that

> the provision is applicable to [appellant], and would allow -- the only real problem I have, and I'll tell you that's based also on the fact the officer indicated that when he went to the house, he gave him the order, showed him why he was there, [appellant] made no objection. He didn't have to. I'm not holding that against him, but that is part of the circumstances that I am relying on.
>    So therefore, I do find that the search was reasonable. The only thing that gives me any pause at all, quite frankly, is the issue that's been raised to me before, and that's the fact that how do we know how many times he was searched in the last year -- or in that particular year? What I do know is that the officer testified that Lunenburg County had not searched at all that year. This was in

- 4 -

March, and the Court is going to take that to -- is going to find, from that evidence, that he had not exceeded the number of times.

So I'm going to overrule your motion to suppress.

Appellant was found guilty of possession of a firearm by a convicted violent felon, in violation of Code § 18.2-308.2(A), possession with the intent to distribute a controlled substance, third offense, in violation of Code § 18.2-248(C), possession with the intent to distribute marijuana, in violation of Code § 18.2-248.1(a)(2), and possession of a firearm while in possession of a controlled substance, in violation of Code § 18.2-308.4(A).[5]

This appeal followed.

## II. ANALYSIS

On appeal, appellant argues that the trial court erred in denying his motion to suppress because the Commonwealth failed to prove that the search of his home, and the subsequent seizure of evidence from it, were within the parameters of the Fourth Amendment waiver as set forth in his plea agreement.[6]

In Virginia, it is well established that "[a]t the initial hearing on a motion to suppress, the Commonwealth 'carries the burden of showing that a warrantless search and seizure was

---

[5] The court found appellant not guilty of manufacture of a controlled substance, in violation of Code § 18.2-248(C), and felony child neglect, in violation of Code § 18.2-371.1(B)(1).

[6] As noted above, the plea agreement was not entered into evidence in this case. The record only contains appellant's 2008 conviction and sentencing orders. While the plea agreement was not entered into evidence, the sentencing order stated that the court "[s]entence[d] [appellant] according to the plea agreement." It also stated that the court was suspending a portion of appellant's sentence "upon the following conditions," one of which was his Fourth Amendment waiver. In addition, in appellant's opening brief, he states that his Fourth Amendment waiver was "listed within the plea agreement" and "incorporated into the sentencing order." Based upon the language of the sentencing order and appellant's own representations, we assume for the purposes of this appeal that the plea agreement provided that appellant's sentence would be suspended upon certain terms and conditions, including a waiver of the appellant's Fourth Amendment right against unreasonable searches and seizures.

constitutionally permissible.'" Cole v. Commonwealth, 294 Va. 342, 354 (2017) (quoting

Jackson v. Commonwealth, 267 Va. 666, 673 (2004)). However, "[u]pon review of the [trial]

court's denial of a suppression motion, 'the burden is upon [the appellant] to show that the

ruling, when the evidence is considered most favorably to the Commonwealth, constituted

reversible error.'" Hill v. Commonwealth, 68 Va. App. 610, 616-17 (2018) (third alteration in

original) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 488 (2002)), aff'd, 297 Va. 804

(2019).

"On appeal of the denial of a motion to suppress, we view the evidence in the light most

favorable to the Commonwealth." Carlson v. Commonwealth, 69 Va. App. 749, 757 (2019)

(quoting McCracken v. Commonwealth, 39 Va. App. 254, 258 (2002)). This Court is "bound by

the trial court's findings of historical fact unless plainly wrong or without evidence to support

them." Matthews v. Commonwealth, 65 Va. App. 334, 341 (2015) (quoting McGee v.

Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)). "This standard [also] requires us 'to

give due weight to inferences drawn from those facts by resident judges and local law

enforcement officers.'" Commonwealth v. White, 293 Va. 411, 414 (2017) (quoting Evans v.

Commonwealth, 290 Va. 277, 280 (2015)). "However, the Court reviews *de novo* the

overarching question of whether a search or seizure violated the Fourth Amendment." Williams

v. Commonwealth, 71 Va. App. 462, 475 (2020).

The Fourth Amendment guarantees, in relevant part, "[t]he right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

U.S. Const. amend. IV. "[S]earches and seizures inside a home without a warrant are

presumptively unreasonable." Kentucky v. King, 563 U.S. 452, 459 (2011) (quoting Brigham

City v. Stuart, 547 U.S. 398, 403 (2006)). However, "[t]he waiver of constitutional rights in a

plea agreement is not an uncommon practice." Murry v. Commonwealth, 288 Va. 117, 129

(2014). "Generally, constitutional rights can be waived as part of a plea agreement." Id. (quoting United States v. Keele, 755 F.3d 752, 756 (5th Cir. 2014)).

Virginia courts have recognized the validity of Fourth Amendment waivers, though with some limitations. "To justify a search on the basis of a waiver, the Fourth Amendment requires the Commonwealth to show that the waiver was given voluntarily and did not result from coercion." Anderson v. Commonwealth, 256 Va. 580, 584 (1998).

In this case, appellant does not contend that the waiver of his Fourth Amendment rights was given involuntarily or resulted from coercion. See id. at 585 ("In the present case, it is difficult to understand how [defendant] can now contend that this condition of his suspended sentence was unreasonable when he knowingly and voluntarily agreed to it."). Rather, appellant's argument only involves the factual basis for the trial court's decision. On appeal, he asserts that the Commonwealth failed to prove that the search of his home did not exceed the limitation set forth in the plea agreement—that his home could be searched no more than six times per year.[7] Contrary to appellant's contention, we conclude that the Commonwealth's evidence established that the search of his home was within with this limitation.

Here, the plea agreement specified that law enforcement could only conduct a Fourth Amendment waiver search up to six times per year. Deputy Wallace testified that he had not personally investigated appellant prior to the search. Additionally, he noted that if a search of appellant's home had been conducted by the Lunenburg County Sheriff's Office, it would have

---

[7] We note that appellant's Fourth Amendment waiver also provided that any searches made pursuant to that waiver could only be done for up to five years following his release from incarceration. While appellant raised the issue of whether the search in this case complied with this five-year requirement at oral argument, he failed to raise this argument in his opening brief. See Rule 5A:20(e) (requiring an appellant to include the arguments relating to the assignment of error in the opening brief). Therefore, we decline to address this argument on appeal. See Buchanan v. Buchanan, 14 Va. App. 53, 56 (1992) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.").

been recorded by that office. The trial court found that, based on Wallace's testimony, Lunenburg County law enforcement authorities had not searched appellant's residence "at all that year."[8] We cannot say that this factual finding was plainly wrong. The court could reasonably have inferred that the fact that a search had not been recorded by the Lunenburg County Sheriff's Office meant that a search had not been conducted by that office. This inference is further supported by Deputy Wallace's testimony that he was not involved with any prior investigation of appellant and had not seen appellant since 2016.

In addition, the trial court considered that appellant, when presented with the September 16, 2008 sentencing order, had not objected to the officers' search of his home. The court also noted that the search in the instant case occurred in March. From this evidence, the trial court concluded that the search of appellant's residence "had not exceeded the number of times" permitted per year pursuant to the plea agreement. Again, we cannot say that this factual finding is plainly wrong. The court reasonably inferred that it was likely that appellant, after having been shown the sentencing order, would have informed the officers if their search was in excess of the number of searches permitted by that agreement.[9] The court also reasonably inferred that

---

[8] In addition, when the trial court stated during argument that "I thought [Deputy Wallace] said they checked, and it said that they had not -- the task force had not," counsel for appellant responded, "Correct, and Your Honor is absolutely right." Counsel then stated that Deputy Wallace had testified that he did not know whether there had been any "federal" investigations. We note that "[a] party can concede the facts but cannot concede the law." Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*) (quoting Cofield v. Nuckles, 239 Va. 186, 194 (1990)). "On purely factual questions, therefore, we can and do rely on the adversarial process to sort out the contested and the uncontested aspects of the case . . . ." Id. We view this exchange between counsel for appellant and the court as appellant's acknowledgment that the local authorities—the Tri-County Drug and Gang Task Force and the Lunenburg County Sheriff's Office—had not conducted any searches of appellant's residence.

[9] We recognize that, for consent searches, "[t]he burden [is] upon the officer to obtain consent, not on [defendant] to affirmatively deny consent." Jean-Laurent v. Commonwealth, 34 Va. App. 74, 80 (2000). Here, however, the issue is not whether appellant consented to the search. Instead, we are considering whether there was support for the trial court's factual finding that the search in this case complied with the parameters of the Fourth Amendment waiver that

it was unlikely that the limit of six searches per year had been reached when the search in the instant case occurred on March 9, just over two months into the year.

As noted above, this Court is "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." Matthews, 65 Va. App. at 341 (quoting McGee, 25 Va. App. at 198). We also "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" White, 293 Va. at 414 (quoting Evans, 290 Va. at 280); see also Jones v. Commonwealth, 29 Va. App. 363, 366 (1999) (recognizing that we must give "due weight to inferences appearing to have been drawn by the trial court"). Because we conclude that the trial court's findings of fact and inferences from those facts are not plainly wrong, we are bound by them on appeal. Therefore, we find that the Commonwealth's evidence was sufficient to prove that law enforcement did not exceed the limit of searches allowed per year under appellant's plea agreement when they searched appellant's home. Thus, there was no error in denying appellant's motion to suppress.

### III. CONCLUSION

We hold that the trial court did not err in denying appellant's motion to suppress. Accordingly, we affirm.

<u>Affirmed.</u>

---

appellant had agreed to in his plea agreement. We conclude that, in this specific context, the trial court was permitted to use the fact that appellant did not object to the officer's search as support for the conclusion that the search did not exceed the number of searches allowed per year pursuant to the plea agreement.

Humphreys, J., concurring, in part, and dissenting, in part.

I agree with the analysis and judgment of the majority that Williams's argument regarding whether or not the search in this case occurred within the five-year period following his release is barred by Rule 5A:20. However, I disagree with the majority's holding that the Commonwealth's evidence, and the inferences drawn therefrom, sufficiently established that the search in this case did not exceed the scope of Williams's waiver of his Fourth Amendment rights and, for the more specific reasons that follow, I respectfully dissent.

## A. The Scope of Williams's Consent

As noted by the majority, "searches and seizures inside a home without a warrant are presumptively unreasonable." Kentucky v. King, 563 U.S. 452, 459 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). Thus, the Commonwealth bears "the burden of showing that a warrantless search and seizure was constitutionally permissible." Cole v. Commonwealth, 294 Va. 342, 354 (2017) (quoting Jackson v. Commonwealth, 267 Va. 666, 673 (2004)). In this case, lacking both a search warrant and probable cause to secure one, the Commonwealth attempted to establish the constitutional permissibility of the warrantless search and seizure that occurred inside of Williams's home by demonstrating that Williams waived his Fourth Amendment rights pursuant to an earlier plea agreement.

Of course, "[t]he waiver of constitutional rights in a plea agreement is not an uncommon practice." Murry v. Commonwealth, 288 Va. 117, 129 (2014). "[I]t is well settled that plea bargaining does not violate the Constitution even though a guilty plea waives important constitutional rights." Id. (quoting Town of Newton v. Rumery, 480 U.S. 386, 393 (1987)). Nevertheless, where the plea agreement places limitations on the scope of the waiver, any subsequent search exceeding that scope is unreasonable unless supported by independent constitutional justification. See Edwards v. Commonwealth, 38 Va. App. 823, 827 (2002) ("A

- 10 -

consensual search is reasonable if the search is within the scope of the consent given." (quoting Grinton v. Commonwealth, 14 Va. App. 846, 850 (1992))).

However, a point apparently overlooked by the majority is that just as a waiver of constitutional rights in a plea agreement binds the defendant to its specific terms, this same principle also applies to the Commonwealth. See Griffin v. Commonwealth, 65 Va. App. 714, 718 (2016) (treating plea agreements accepted by the circuit court as "binding contracts"). Once the circuit court accepted the plea agreement negotiated between the Commonwealth and Williams, both the Commonwealth and Williams were bound by the express terms of that agreement, and the circuit court should require both parties to adhere to it. Calvillo v. Commonwealth, 19 Va. App. 433, 435 (1994); Johnson v. Commonwealth, 214 Va. 515, 518 (1974). See Santobello v. New York, 404 U.S. 257, 264 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). In my view, even viewing the evidence in the light most favorable to the Commonwealth and the reasonable inferences therefrom, the Commonwealth failed to meet its burden of showing that the warrantless search and seizure were constitutionally permissible.

Although "the presence of consent to search and any related limitations are factual issues for the [circuit] court to resolve," Bynum v. Commonwealth, 23 Va. App. 412, 418 (1996), we are not bound by the circuit court's factual findings if the findings are unsupported by the evidence, Matthews v. Commonwealth, 65 Va. App. 334, 341 (2015) (citation omitted).

The majority's holding proceeds from the following premise:

> The trial court found that, based on [Deputy] Wallace's testimony, Lunenburg County law enforcement authorities had not searched appellant's residence "at all that year." . . . The court could reasonably have inferred that the fact that a search had not been

- 11 -

> recorded by the Lunenburg County Sheriff's Office meant that a search had not been conducted by *that office*.

Ante at 8 (emphasis added).

I accept the entirety of this statement as a correct recitation of a fact that is entirely supported by the evidence in this record. Where I part from my colleagues is with their adoption of the circuit court's follow-on conclusion that this fact is sufficient to establish that "law enforcement" as that term is used in the plea agreement waiver, "had not exceeded the number of times" a consent search could be conducted during the calendar year pursuant to that waiver. Id.

It is important to note that the plea agreement, negotiated between and agreed to by both the Commonwealth and Williams, contained an express Fourth Amendment waiver provision that, in effect, constituted prior consent by Williams permitting "law enforcement" officials to search his person and property a total of up to six times per calendar year for the five years following his release from confinement. Certainly, the language in the waiver could have been limited to searches by Lunenburg County sheriff's deputies or members of the Tri-County Drug and Gang Task Force, in which case the factual finding by the circuit court would be dispositive of the assignment of error, and I would join my colleagues in the majority in affirming the judgment in this case.

However, for whatever reason, the agreement negotiated here by the attorney for the Commonwealth clearly specified that the scope of the Fourth Amendment waiver by Williams was limited to a total of six searches per year by any and all "law enforcement" officials. It is equally clear that the record is silent on the number of searches preceding the search in question conducted by anyone other than the Lunenburg County Sheriff's Office, including any other state or federal "law enforcement" agencies or officials. As noted above by the majority, the Commonwealth only established that the Lunenburg County Sheriff's Office and the task force had not performed any prior searches within the calendar year and that, although he checked no

database other than the circuit court records, Deputy Wallace understood that the "state reporting system" only indicated that a prior case had not been "made" against Williams. In the light most favorable to the Commonwealth, this only implies at best that the number of searches in that system are not tracked and that prior searches by the state police, if any, were unfruitful in recovering contraband or evidence of a crime.[10] The record is silent with respect to searches conducted by other state or federal law enforcement officials other than indicating that Deputy Wallace had no way of knowing if any occurred.

Thus, in my view, the Commonwealth failed in its burden to affirmatively establish that the search and seizure were within the scope of the Fourth Amendment waiver, and therefore the Commonwealth likewise failed to overcome the presumption of the unconstitutionality of a warrantless search. Accordingly, I disagree with the majority's conclusion that the circuit court's findings were not plainly wrong. The Commonwealth had the entire burden of establishing that the warrantless search of Williams's home was within the scope of the waiver bargained for in the plea agreement. Whether, in hindsight, the terms of the waiver were logistically imprudent or overly burdensome for the Commonwealth to satisfy is beside the point for our purposes here. Those terms are what they are and are equally binding on the parties in their entirety.

The record in this case simply does not support the circuit court's implicit conclusion that, because the Lunenburg County Sheriff's Office had not previously conducted any prior

---

[10] Deputy Wallace and Special Agent Lacks of the Virginia State Police jointly conducted the search in this case as members of the Tri-County Drug and Gang Task Force. Significantly, Deputy Wallace testified that the extent of his efforts toward the possibility of conducting a search of Williams's home was limited to a check of the circuit court records which unearthed the plea agreement containing the Fourth Amendment waiver. He specifically testified that he made no attempt to check any other database, and Special Agent Lacks was never asked any questions regarding prior searches of Williams or his home by the Virginia State Police.

searches of Williams that year, it was irrelevant whether or not other law enforcement officials had conducted prior searches of Williams or his home that same year.

Moreover, because both parties were bound by the terms of the plea agreement and waiver, Williams was not required to object when the officers entered his home, purportedly under the authority of the plea agreement, in order to enforce his rights under that agreement and his failure to do so does not automatically equate to consent. When a citizen consents to an officer's general request to search, the scope of that consent "is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did." Grinton, 14 Va. App. at 851. When an individual consents in that way, "[t]he scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched." Id. Thus, depending on the circumstances, a "[f]ailure to object to the continuation of the search" after consenting to a general search "may be considered an indication that the search was within the scope of the consent." Lawrence v. Commonwealth, 17 Va. App. 140, 146 (1993) (citation omitted). Because Fourth Amendment rights are personal, a general consent can be subsequently limited or withdrawn entirely, at which point the search must cease or a warrant must be obtained, unless probable cause for a warrantless search has already been developed. See id. at 145 (quoting Florida v. Jimeno, 500 U.S. 248, 252 (1991)).

However, because the waiver in this case was in the form of a written plea agreement, it is distinguishable from the situation where an individual verbally consents to an officer's general request to search and can withdraw or limit it at any time before the search is concluded. Here, as agents of the Commonwealth, the officers involved were aware of the specific parameters of Williams's waiver prior to conducting the search. Deputy Wallace showed Williams a copy of his plea agreement and waiver prior to the search, implying that Deputy Wallace was relying

- 14 -

solely on the scope of the written contractual waiver for his authority for the search, and therefore, the proper place to object if Williams felt that the search was outside the scope of the waiver was in a courtroom, not at the scene. Nevertheless, in the abstract, it is theoretically possible that Williams's failure to object to the search *could* have constituted a unilateral expansion of the previously agreed scope of his earlier waiver. But that argument was not raised in or reached by the circuit court, or raised on appeal to this Court and, in any event, would require findings of fact not presently contained in this record.

### B. The Application of the Exclusionary Rule

Even if the search in this case exceeded the scope of the consent contained in the plea agreement's waiver of Williams's Fourth Amendment rights, it is not necessarily the case that the evidence obtained should be suppressed, but the record currently before us is insufficient to definitively make such a determination.

The exclusionary rule does not apply to evidence obtained pursuant to a warrantless search so long as the officers act in good faith, even though they do so erroneously. Illinois v. Krull, 480 U.S. 340 (1987); Illinois v. Rodriguez, 497 U.S. 177 (1990). "The 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite'" the defendant's waiver, taking into account the totality of the circumstances. Adams v. Commonwealth, 275 Va. 260, 268, 272 (2008) (quoting United States v. Leon, 468 U.S. 897, 905 (1984)). Where an officer has acted in good faith, the Fourth Amendment does not require the exclusion of that evidence because,

> [t]he deterrent purpose of the exclusionary rule necessarily
> assumes that the police have engaged in willful, or at the very least
> negligent, conduct which has deprived the defendant of some right.
> By refusing to admit evidence gained as a result of such conduct,
> the courts hope to instill in those particular investigating officers,
> or in their future counterparts, a greater degree of care toward the
> rights of an accused. Where the official action was pursued in

> complete good faith, however, the deterrence rationale loses much of its force.

Id. at 272 (quoting United States v. Peltier, 422 U.S. 531, 539 (1975)). "In short, where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.'" Id. (quoting Leon, 468 U.S. at 919-20). Thus, the good faith exception functions "to limit the application of the exclusionary rule to those instances when it will most effectively serve to deter police misconduct." Id. at 273 (citation omitted).

However, the record in this case is insufficient for us to review any finding of good faith on the part of Deputy Wallace and details regarding the extent of his efforts to comply with the waiver are sparse to say the least. The record indicates that the only steps Deputy Wallace took to ascertain Williams's status prior to the search was a review of the circuit court records where he uncovered the plea agreement and waiver. Deputy Wallace testified that he would have had personal knowledge of any other searches of Williams by the Lunenburg County Sheriff's Office and knew of none. However, he also testified that he knew of no database in existence that would record the number of searches conducted by law enforcement agencies generally and checked no other sources. There are no factual findings or rulings by the circuit court with respect to diligence or good faith on the part of Deputy Wallace for us to review.

For all of these reasons, I would reverse and remand for further proceedings, including a new trial if the Commonwealth is so advised, with the fruits of the search suppressed unless there are additional factual findings supporting whether Williams unilaterally extended the scope of

the consent to search contained in his written waiver or whether Deputy Wallace and Special

Agent Lacks acted in good faith in the manner in which they conducted the search in this case.[11]

---

[11] I recognize that the necessity for a new trial upon remand would be dependent upon any additional findings of fact related to the motion to suppress that would either independently support the search or the application of the good faith exception to the application of the exclusionary rule.