COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


VERLIE MARION WORD, JR.
                                          OPINION BY
v.   Record No. 0097-02-2          JUDGE SAM W. COLEMAN III
                                        SEPTEMBER 16, 2003
COMMONWEALTH of VIRGINIA


              FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                      Leslie M. Osborn, Judge

          Tracy L. Quackenbush (Law Office of W. W.
          Bennett, Jr., P.C., on brief), for appellant.

          Leah A. Darron, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Verlie Marion Word, Jr., appeals the trial court's order

revoking his suspended sentence contending that the court abused

its discretion by finding he violated a condition of probation.

He argues that he was unable, through no fault of his own, to

enter and successfully complete the Detention Center Incarceration

Program (Program), to which the court had ordered him committed,

because the Program's administrator arbitrarily refused to accept

him after having previously recommended to the court that he be

permitted to participate.

     From our reading of the trial court's order, it is unclear

whether the trial court found Word to be in violation of a

condition of probation.  What is clear from the record is the court found it to be "an impossibility" for Word to comply with the condition of the suspended sentence that he enter and successfully complete the Program because the Program would no longer accept Word; thus, the court vacated that provision of the sentencing order which required that Word attend the Program. Nevertheless, to the extent that the court may have found Word violated a condition of probation, we find no evidence to support such a finding.  Accordingly, we reverse the trial court's probation violation finding and remand the case to the trial court to vacate that portion of its order.  We affirm, however, the trial court's revocation of a portion of Word's suspended sentence based upon the court's determination that it was "an impossibility" for Word to satisfy that condition of his suspended sentence which required that he attend the Program, a requirement imposed as a prerequisite to suspending the sentence.

## FACTS

The trial court convicted Word for the felonies of eluding a police officer, two counts of driving after being declared an habitual offender, and possession of cocaine and sentenced him to a total of nine years and twelve months confinement.  Before imposing sentence, the court ordered that Word be evaluated by the Program to determine his eligibility for participation as an alternative to incarceration.  The Program determined that Word

- 2 -

satisfied the criteria for acceptance and recommended him for the program.

Based on the Program's recommendation, the trial court ordered the following:

> The Court SUSPENDS all of the (2) year Elude Police Officer sentence, all but twelve (12) months of the two (2) year Drive After Declared Habitual Offender felony charge, all of the twelve (12) month Drive After Declared Habitual Offender misdemeanor sentence, and all of the five (5) year Possess Schedule II Controlled Substance – Cocaine sentence, for a total suspension of eight (8) years, twelve (12) months upon the following conditions:
>
> Good Behavior:  The defendant shall be of good behavior for five (5) years from the defendant's release from confinement.
>
> Community-based Corrections System Program: The defendant shall enter and successfully complete the Detention Center Program and then the Diversion Center Program.
>
> Supervised probation:  The defendant is placed on probation to commence today, under the supervision of a Probation Officer for (3) years, or unless sooner released by the court or by the Probation Officer.  The defendant shall comply with all the rules and requirements set by the Probation Officer.

Thus, while Word was sentenced to serve twelve months active incarceration, he was then to be successively confined in the Detention Center Program and the Diversion Center Program.

Word served the active twelve-month sentence but was not released or transferred to the Department of Corrections for entry into Program as the court had ordered.  Word filed a

- 3 -

motion that he be released because the sentencing order did not require or authorize that he be further incarcerated awaiting transfer into the Program. At the hearing on the motion, the trial judge issued a capias to hold Word pending a show cause hearing as to why his probation and suspended sentences should not be revoked based on the Program administrator having now determined that Word would not be accepted into the Program.

By way of proffer, the assistant Commonwealth's attorney represented that he had informed the Program that Word was being investigated by federal authorities for two murders that occurred in 1993 and that indictments were likely to be forthcoming. The Commonwealth's attorney represented that he contacted the Program only out of a "concern for security" and to ensure that Word was no "flight risk." After being contacted by the Commonwealth's attorney, the Program determined that Word would not be accepted because of the likelihood that he would be arrested and would be unable to complete the Program. A senior probation officer notified the court by letter that the Program would not accept Word "due to the ongoing criminal investigation."

The trial court denied Word's motion to be released, ruling that the court had intended that Word remain incarcerated until he was transferred to the Program. During the show cause portion of the hearing, the trial court ruled that Word's entry into the Program was a condition of his suspended sentence, which had been imposed as an alternative to incarceration.

- 4 -

Thus, the trial court ruled that because entry into the Program was now "an impossibility" Word was in violation of a condition of his suspended sentence. Because the sentencing order provided for successive periods of confinement in the Detention Center Program and the Diversion Center Program as an alternative to incarceration and after Word served a twelve-month jail sentence, the court revoked the suspended sentence and then re-suspended all but 120 days of the sentence, effectively imposing a 120-day jail sentence in lieu of confinement in the two programs.

ANALYSIS

Revoking Suspended Sentences

"The law of Virginia distinguishes the suspension of a sentence from the imposition of probation." Anderson v. Commonwealth, 25 Va. App. 565, 572, 490 S.E.2d 274, 277 (1997) (citing Grant v. Commonwealth, 223 Va. 680, 292 S.E.2d 348 (1982)), aff'd en banc, 26 Va. App. 535, 495 S.E.2d 547, aff'd, 256 Va. 580, 507 S.E.2d 339 (1998). "[S]entencing judges must be cognizant that probation and suspension of sentence are separate and distinct concepts and that they may be fixed at different intervals to accomplish different goals." Carbaugh v. Commonwealth, 19 Va. App. 119, 126, 449 S.E.2d 264, 268 (1994) (citation omitted).

Suspending sentence is to delay either the execution of an imposed sentence or the imposition of a sentence. See Code

- 5 -

§ 19.2-303. A court may "suspend" all or a portion of a sentence or delay imposition of a sentence "under terms and conditions which shall be entered in writing by the court." Id.

Probation, on the other hand, refers to the continued supervision by the court over the convicted offender and may be either supervised or unsupervised but shall be "under such conditions as the court shall determine." Id. Probation is defined as "the action of suspending the sentence of a convicted offender in such a way that the offender is given freedom after promising good behavior and agreeing to a varying degree of supervision, to the usual imposed condition of making a report to a particular officer or court at stated intervals, and to any other additionally specified conditions." Webster's Third New International Dictionary 1806 (1981). Black's Law Dictionary defines probation as "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison." Black's Law Dictionary 1220 (7th ed. 1999).

A suspended sentence and probation are often coterminous and usually augment one another in that probation and the conditions imposed for probation are usually ordered to enable the convicted offender to accomplish certain goals during the term of a suspended sentence. "[While] the conditions imposed in probation and those imposed in the suspension of sentences need not be analyzed in different contexts[, separate conditions

- 6 -

may be imposed as a prerequisite to suspending a sentence which may be only tangentially related to the conditions of probation. However,] [t]he common objective of such conditions is to protect society and to promote rehabilitation of the convict." Anderson, 25 Va. App. at 572, 490 S.E.2d at 277.

Here, the trial court imposed a suspended sentence conditioned upon Word (1) being of good behavior, (2) being on supervised probation, and (3) completing the Program. The court's sentencing order provided that, after serving a period of incarceration in jail, Word would be confined in the Program, a residential program operated by the Department of Corrections (Department) pursuant to Code § 53.1-67.8.[1] While entering and successfully completing the Program may have been a condition of probation, merely entering the Program was a prerequisite to and one of the conditions upon which the nine-year sentence was suspended. When the trial court sentenced Word for the various non-violent felonies, the court clearly intended to impose, and

---

[1] Code § 53.1-67.8 provides:

> The Department is authorized to establish and maintain a system of residential detention centers to provide a highly structured, short-term period of incarceration for individuals committed to the Department under the provisions of § 19.2-316.2. The Program shall include components for military-style management and supervision, physical labor in organized public works projects, counseling, remedial education, substance abuse testing and treatment, and community re-entry services.

did impose, upon Word an additional term of confinement in a regimented environment with a structured program between his active incarceration and his release into the community. The Program is for non-violent offenders, such as Word, who do not qualify for the Boot Camp Incarceration Program pursuant to Code § 19.2-316.1, but nevertheless require and would benefit from a demanding structured program.

The Department conducted an evaluation to determine Word's suitability for the Program and recommended he be "committed" to the Program.[2] However, prior to Word's entry, the Program's administrator determined not to admit Word based upon the Commonwealth's attorney having informed him that Word was under

---

[2] Code § 19.2-316.2 provides:

> 1. Following conviction and prior to imposition of sentence . . . , upon motion of the defendant, the court may order such defendant committed to the Department of Corrections for a period not to exceed sixty days from the date of commitment for evaluation and diagnosis by the Department to determine suitability for participation in the Detention Center Incarceration Program. . . .

> 2. Upon determination that (i) such defendant is physically and emotionally suited for the program, (ii) such commitment is in the best interest of the Commonwealth and the defendant, and (iii) facilities are available for the confinement of the defendant, the Department shall recommend to the court in writing that the defendant be committed to the Detention Center Incarceration Program.

federal investigation for a violent felony and that his arrest might be imminent.  Thus, because the prospect existed that Word might be arrested and be unable to complete the Program, the administrator changed the recommendation to denying Word admission.  Accordingly, because the Program would not accept Word, the court determined that performance of that condition of the suspended sentence became "an impossibility."

Code § 19.2-306 provides, "The court may, for any cause deemed by it sufficient . . . revoke the suspension of sentence . . . and cause the defendant to be arrested and brought before the court . . . whereupon, . . . the court may pronounce whatever sentence might have been originally imposed."

> When a defendant fails to comply with the terms and conditions of a suspended sentence, the trial court has the power to revoke the suspension of the sentence in whole or in part.  "A trial court has broad discretion to revoke a suspended sentence . . . based on Code § 19.2-306, which allows a court to do so 'for any cause deemed by it sufficient.'"

Alsberry v. Commonwealth, 39 Va. App. 314, 320, 572 S.E.2d 522, 525 (2002) (citations omitted).

Here, the trial court had sentenced Word to terms of incarceration totaling nine years and twelve months and suspended all but twelve months conditioned upon Word entering and successfully completing the Detention Center Program and then the Diversion Center Program.  The sentencing order did not provide that after serving his active incarceration that Word

- 9 -

would be released from confinement and remain on probation.  The order provided that he would be confined in another intermediate facility of the Department as an alternative to incarceration where he would receive a variety of services.  When Word could no longer satisfy the prerequisite condition under which his sentence was suspended, i.e. that he enter and successfully complete two Department programs, the court had the authority to reconsider the suspended sentences, see Richardson v. Commonwealth, 131 Va. 802, 109 S.E. 460 (1921) (when execution of a sentence is suspended the case remains pending and the court does not lose control of the case or the accused), and to determine what portion of the suspended sentences or other alternatives to incarceration would be appropriate in lieu of the confinement that had been ordered in the community-based programs.

While the revocation of a suspended sentence must be based upon reasonable cause, the failure or inability of a convicted offender to participate in a community based diversion program, when such participation was a condition of and prerequisite to having been given a suspended sentence, is a reasonable cause for the court to revoke a suspended sentence.  See Bailey v. Commonwealth, 19 Va. App. 355, 451 S.E.2d 686 (1994).  Here the court conducted a revocation hearing and considered the sentencing options available and determined to revoke, in effect, a portion of the suspended sentence.  Under these

- 10 -

circumstances, we find the revocation of the suspended sentence to be reasonable.

Accordingly, we affirm the trial court's revoking Word's nine-year suspended sentence and in re-suspending all but 120 days, thereby requiring that he serve an additional 120 days of active incarceration. Such action was not arbitrary; it was done with due process, and was consistent with the trial court's original sentencing objectives.[3]

## Revoking Probation

To the extent that the trial court found Word to be in violation of probation, we agree with Word that he did not violate any condition of probation.

Word was called upon to show cause "why his suspended sentence should not be revoked for violation of probation conditions . . . ." The trial court's disposition order stated that appellant "was found to have violated the terms and

---

[3] Grounds for revoking Word's suspended sentence were not founded in the statutes governing the Programs. Code § 19.2-316.2(4) provides that "[u]pon a finding that the defendant voluntarily withdrew from the Program, was removed from the Program by the Department for intractable behavior, or failed to comply with the terms and conditions of probation, the court may revoke all or part of the . . . suspended sentence . . . ." Word was not removed from the Program for intractable behavior. The court did not find, nor does the record suggest, that Word was unwilling or unable to conform his behavior to that required to complete the Program. See Code § 19.2-316.1 (defining "intractable behavior"); see also Peyton v. Commonwealth,___ Va. App. ___, ___ S.E.2d ___ (2003) (revocation upheld where medical condition prevented Peyton from completing Program).

- 11 -

conditions of the previously suspended sentence . . . ."  We understand this language to distinguish between revoking a suspended sentence and revoking probation and that the court held Word's failure to satisfy the condition of the suspended sentence was the ground for additional time being imposed. However, the trial court further ordered that Word "shall not be subject to another show cause on this particular violation of probation conditions."  This, and other language in the order suggests that the court may have found that Word violated a condition of probation and that a probation violation may now be part of Word's criminal record.

As previously noted,

> Although the power of a court to revoke [probation or] a suspended sentence granted by [Code § 19.2-306] is broad, it is not without limitation.  The cause deemed by the court to be sufficient for revoking [probation or] a suspension must be a reasonable cause.
>
> The sufficiency of the evidence to sustain an order of revocation "is a matter within the sound discretion of the trial court. Its findings of fact and judgment thereon are reversible only upon a clear showing of abuse of such discretion."  The discretion required is a judicial discretion, the exercise of which "implies conscientious judgment, not arbitrary action."

Duff v. Commonwealth, 16 Va. App. 293, 297, 429 S.E.2d 465, 467 (1993) (citation omitted).

> The true objective of suspended sentencing [and probation] is to rehabilitate and to encourage a convicted defendant to be of

- 12 -

> good behavior. To accomplish this it is necessary that good conduct be rewarded. It is important that a defendant know that good conduct on his part will expedite his complete restoration to society.

Hamilton v. Commonwealth, 217 Va. 325, 328, 228 S.E.2d 555, 556-57 (1976).

"Although a probation violation hearing is not a stage of a criminal prosecution, and thus does not afford a convict all rights attending a criminal prosecution, such revocation hearing is nevertheless a criminal proceeding[,]" Green v. Commonwealth, 263 Va. 191, 195-96, 557 S.E.2d 230, 233 (2002) (citations omitted), which carries significant penal consequences. Probation violations are entered in the National Crime Information Computer (NCIC) and become a part of a convicted criminal's record. A person's criminal record impacts employment and other personal opportunities, as well as any subsequent criminal proceedings which might arise, including bond hearings, sentencing hearings, placement in correctional programs and institutions, and length of supervision. Most significantly, probation violations are considered "sentencing events" for the purpose of a court calculating sentencing guidelines.

Appellant committed no willful act that would reasonably support a violation of probation. The crimes for which the prosecutor alleged the federal authorities were investigating Word preceded the term of probation and suspended sentence and,

- 13 -

thus, would not have been a basis for revoking Word's suspended sentence.  See Bailey v. Commonwealth, 19 Va. App. 355, 357, 451 S.E.2d 686, 687 (1994) (holding "revocation of the suspended sentence . . . must be based upon cause that occurred within the suspension or probation period").  See also Code § 19.2-306; Preston v. Commonwealth, 14 Va. App. 731, 419 S.E.2d 288 (1992).  Moreover, insofar as the record reflects, Word was not arrested or charged with the offenses that were being investigated at any time the trial court was considering whether to revoke Word's suspended sentence or probation.  Thus, to the extent that the trial court may have found that Word violated a condition of probation, we reverse that finding and remand the case to the trial court to vacate that finding and to take such further action as hereafter directed to remove the probation violation finding from Word's record.

In summary, we affirm the trial court's revocation of Word's suspended sentence and re-suspending all but 120 days of the remaining nine-year sentence.  We reverse that portion of the trial court's order to the extent that it may have found that Word violated a condition of probation; we remand the case to the trial court with instructions that the court determine whether Word was found to have violated a condition of probation and, as a result, has a probation violation on his record.  To the extent that Word has a probation violation on his record, the court shall vacate that part of its order and enter such

- 14 -

order as is necessary to remove and expunge the probation violation from Word's record.

<u>Affirmed in part,<br>
vacated and<br>
remanded in part.</u>

Benton, J., concurring, in part, and dissenting, in part.

I concur in the portion of the opinion styled Revoking Probation and in reversing the trial judge's finding that Verlie Marion Word violated a condition of probation.  I dissent from the holding that the trial judge did not err in revoking Word's suspended sentence.

The record indicates that after the trial judge accepted Word's guilty plea, the judge ordered that Word be evaluated by the Detention Center Incarceration Program.  The Detention Center did so and determined that Word was suitable for the placement.  The final conviction order, which was entered in 2001, suspended eight years and twelve months of Word's sentence on condition that he enter and successfully complete the Detention Center program.  After Word served the sentence of active incarceration, the Department of Corrections did not transfer him to the Detention Center as required by the order.

At a hearing held less than four months after entry of the conviction order, the prosecutor represented to the trial judge by way of proffer the following reason for the Department's actions:

> Mr. Word is the subject of a federal investigation related to two murders that occurred in 1993.  We've been investigation this . . . since '93 and with my involvement, I guess, since the last of that, four months.
>
> Mr. Word, in our opinion, was a security risk.  Word had gotten back to him

that he was going to be charged with two counts of capital murder. We believe that he is a security risk, a flight risk.

I made contact with the detention center and inquired of them as to what their facilities were like, whether or not he would be allowed to leave the premises unaccompanied.

They advised that precautions could be taken with somebody, but in light of the charges, though they are not pending, I want to make that clear to the Court, he has not been charged yet, though I can state quite frankly in court, he will be charged. The evidence is quite sufficient.

He will probably be charged in February for the two counts of capital murder plus a number of other federal charges relating to the attempted distribution of controlled substances. I believe that would be more than fifty grams.

Anyway, I'm sorry, I relayed that information to the detention center. And they said, quite frankly, in that case, we can't take someone like that, he cannot be housed here, especially in light of the fact that I cannot guarantee them, that he would not be able to complete any type of program and that it's most likely that he would be taken out of the program there soon after July.

So, that's the basis for the show cause. And, in essence he cannot complete the detention center.

"Although the power of the court to revoke a suspended sentence granted by . . . [Code § 19.2-306] is broad, it is not without limitation." Duff v. Commonwealth, 16 Va. App. 293, 297, 429 S.E.2d 465, 467 (1993). By well established rules of decision "'[t]he cause deemed by the court to be sufficient for

- 17 -

revoking a suspension must be a reasonable cause.'" Id. Thus, we have held that "a reasonable failure to [conform to the condition of the suspension] negates a reasonable cause to revoke a suspended sentence." Id. at 298, 429 S.E.2d at 467.

The dispositive issue is whether, based on the information before the trial judge, Code § 19.2-316.2 permitted revocation of the suspended sentence or whether revocation was otherwise authorized under Code § 19.2-306, the general statute for revoking probation and suspended sentences. I believe those statutes did not authorize the revocation of the sentence. When the trial judge convicted and sentenced Word for non-violent felonies, the judge intended to impose upon Word confinement in a regimented environment with a structured program between his active incarceration and his release into the community. The Detention Center is for non-violent offenders, such as Word, who do not qualify for the Boot Camp Incarceration Program pursuant to Code § 19.2-316.1, but nevertheless require structured detention. The Detention Center determined that Word was emotionally and physically suited to the program and could benefit from it. When the program later determined not to "accept" Word after the judge had ordered the placement, Word had not been charged in that interval with any offense.

Code § 19.2-316.2(4) provides that "[u]pon a finding that the defendant voluntarily withdrew from the program, was removed from the program . . . for intractable behavior, or failed to

- 18 -

comply with the terms and conditions of probation, the court may revoke all or part of the probation and suspended sentence . . . ." Word did not withdraw from the Detention Center and was not removed for intractable behavior as defined by Code § 19.2-306.1. The crimes, which the prosecutor alleges the federal authorities were investigating, preceded the term of probation and suspended sentence and, thus, would not have been a basis for revoking Word's suspended sentence. See Bailey v. Commonwealth, 19 Va. App. 355, 357, 451 S.E.2d 686, 687 (1994) (holding that "[t]he revocation of the suspended sentence . . . must be based upon cause that occurred within the suspension or probation period"). See also Code § 19.2-306; Preston v. Commonwealth, 14 Va. App. 731, 419 S.E.2d 288 (1992). Indeed, the prosecutor noted the Commonwealth had been investigating these same events since 1993. At the 2001 sentencing proceeding, however, these matters were not disclosed to the trial judge as a reason to deny granting either the suspended sentence or probation.

The trial judge did not find and the record does not suggest that Word was unwilling or unable to conform his behavior to that required to complete the program. See Code § 19.2-316.1 (defining "intractable behavior" in terms that denote willful or obstinate conduct). Furthermore, no provisions of Code §§ 19.2-316.2 or 19.2-316.1 require that a person being considered for the program be disqualified due to

- 19 -

ongoing criminal investigations. The Detention Center had determined pursuant to Code § 19.2-316.2(A)(2) and (3) that Word met the criteria for eligibility in the program, and the record establishes no grounds for revocation of his suspended sentence. Additionally, the prosecutor did not prove any violations of the conditions of probation or of the requirements to be of good behavior.

The record also does not establish that the Detention Center had a policy which precluded Word's admission to the program. Indeed, Word's attorney proffered that the supervisor of the program told her the Detention Center's policies did not bar Word's entry to the program. The prosecutor concurred in that representation in the following colloquy:

> [PROSECUTOR]: That seems to confirm my conversation with him. When I initially spoke with him I was just inquiring as to their security at this facility. I mean, I fully expected Mr. Word to go to the detention center, and I was just concerned that he was a flight risk and was inquiring what the security was. When I mentioned pending charges or the possibility of pending charges -- and I guess I was forceful, I guess, in my representation that charges are coming -- it's more of, I guess, a matter of getting the ducks in a row at the federal level -- that seemed to peak his interest, but it -- but I guess the counter question from him was could I guarantee that Mr. Word would complete the program. And that seemed to be -- their biggest concern was they didn't want someone that they knew was most likely going to be taken out before the completion of the program. And I don't know if they have some sort of statistic thing or --

- 20 -

> [JUDGE]:  Their funding is based on how many people they get -- they get to complete the program.
>
> [PROSECUTOR]:  I thought that might be the issue, Your Honor.
>
> [THE COURT]:  That's their problem.  They're going to shy away from anybody they don't think -- they're not pretty sure is going to get through the program.
>
> [PROSECUTOR]:  I think that's -- maybe I was too forceful in the representation that this is coming . . . .

Thus, it is apparent from the record that Word continued to be qualified for participation in the program.  The Detention Center, nevertheless, refused to accept custody of Word because it was concerned about protecting its statistical profile.  The trial judge accepted that rationale, ruled that Word had violated the terms of his suspended sentence, and did not consider any alternatives but that of additional incarceration.

While our decision in Duff addressed probation violations under Code § 19.2-305.1, specifically the failure to pay restitution, the principles discussed in that opinion concerning reasonableness apply generally.  See also Code § 19.2-306; Coffey v. Commonwealth, 209 Va. 760, 167 S.E.2d 343 (1969) (holding that good behavior is an implicit condition of every suspended sentence).  "Where the evidence establishes that the failure [to comply with the terms of a suspended sentence] resulted from an inability to [perform] and not a willful refusal, it is an abuse of discretion to automatically revoke

- 21 -

the prior suspended sentence without considering reasonable alternatives to imprisonment." Duff, 16 Va. App. at 298-99, 429 S.E.2d at 468. In the present case, the trial judge acknowledged that the Detention Center's refusal to accept Word was not due to willful misconduct by Word. Further, the trial judge accepted the proffers and made no direct inquiry as to why the Detention Center failed to accept Word after the Detention Center had found him qualified and recommended the referral.

Simply put, the record indicates the revocation of the suspended sentence was based on the fact that the Detention Center did not receive from the prosecutor a "guarantee that . . . Word would complete the program" and, thus, the Detention Center declined to put at risk its statistical profile. The trial judge exercised an arbitrary and unreasonable judgment in accepting this rationale. "The discretion required is a judicial discretion, the exercise of which 'implies conscientious judgment, not arbitrary action.'" Hamilton v. Commonwealth, 217 Va. 325, 327, 228 S.E.2d 555, 556 (1976) (citation omitted). Under these circumstances, I would hold that the trial judge abused his discretion in finding that Word violated the terms and conditions of his suspended sentence and in sentencing him to an additional term of incarceration.

For these reasons, I would reverse both the finding that Word violated his probation and the order revoking the suspended sentence.