UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Ortiz and Chaney
Argued at Fairfax, Virginia


LOGAN JAMES LENTZ

MEMORANDUM OPINION* BY
v.        Record No. 0868-24-4          JUDGE VERNIDA R. CHANEY
                                        DECEMBER 9, 2025

COMMONWEALTH OF VIRGINIA


UPON A REHEARING

FROM THE CIRCUIT COURT OF PAGE COUNTY
Clark A. Ritchie, Judge

Elena Kagan, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Logan James Lentz appeals the circuit court's revocation of his suspended sentences.  He

argues the court erred in finding him in violation of his probation because his termination from

the court-ordered abuse treatment program was not willful.  Viewing the evidence in the light

most favorable to the Commonwealth, we conclude that the circuit court acted within its

discretion in finding that Lentz violated his probation.  For the reasons set forth below, this Court

affirms.[1]

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] This Court previously granted Lentz's petition for rehearing and now considers the
merits of the appeal.

BACKGROUND[2]

In August 2021, Lentz pleaded guilty to possession with the intent to distribute marijuana and driving while intoxicated. The circuit court sentenced him to 3 years and 12 months' confinement, suspending 2 years and 21 months, and imposed 3 years of supervised probation. The court conditioned his suspended sentences on compliance with the terms of probation, including that Lentz "complete any evaluations, treatments[,] or counseling as recommended by the probation officer to the probation officer['s] satisfaction."

Over the next three years, Lentz faced three revocation proceedings. His first probation term began in October 2021. During the following months, Lentz failed to maintain contact with his probation officer despite multiple attempts "to make contact with [him]." When the officer eventually encountered him at the courthouse, Lentz initially avoided interaction and provided a disconnected number, stating he would report his address later. A subsequent drug screening "tested positive for Methamphetamine, Amphetamine, and MDMA." Based on these events, the officer filed a major violation report ("MVR"). Following a revocation hearing, the circuit court found Lentz in violation, resuspended his sentences under the same conditions, and added the requirement that he complete the Gemeinschaft Residential Program.

Lentz reentered supervised probation in June 2022 and was admitted to Gemeinschaft in January 2023. Within two months, he was terminated for non-compliance after "repeatedly fail[ing] to follow the rules and regulation[s] of the program," accumulating unaccountable time away, forging sign-out sheets, and using an unapproved driver to travel to unauthorized locations. At the second revocation hearing, the court found him in violation based on his failure to complete

---

[2] We recite the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court. *Pereira v. Commonwealth*, 83 Va. App. 431, 439 n.3 (2025).

Gemeinschaft, imposed 14 days of incarceration, and re-ordered him to complete the program, warning that further failure would result in serving his full sentence.

After serving 14 days, Lentz returned to Gemeinschaft in March 2023. By May 2023, he was terminated again. At the third revocation hearing, the Commonwealth introduced the probation officer's MVR, which stated the reason for the termination:

> [O]n May 7, 2023, he and his girlfriend invited a former girlfriend of his (mother of one of his children) to the Gemeinschaft during a visitation to supposedly participate in a birthday gathering of one of Lentz's children. The former girlfriend [Brianna Foltz] had outstanding warrants and once she arrived, the current girlfriend [Kayla Foster] called the police and the young lady was arrested. . . . We believe this was all a plan by Lentz and the current girlfriend and is unacceptable behavior to create all this drama on the Gemeinschaft property and endanger his own child in the process.

Lentz then presented testimony from Deputy Logan Thomas, who explained that he "was working a case for Kayla [Foster]. I called her to follow up and she was [at] Gemeinschaft, and she informed me that Brianna Foltz was there." Thomas testified that the case he was investigating involved Foster and Foltz. When Thomas learned during that call that Foltz was present at the birthday party, he alerted the Sheriff's office, which then arrested her. Thomas stated that he never spoke to Lentz and did not act at his direction.

Lentz then testified that "[w]e were having [his] child's birthday party" and that he "had invited [his] daughter and her mother [Brianna Foltz]." He also confirmed his mother's and Foster's presence. Lentz stated that he had "been compliant with probation since May 8th of 2023," "was working at 7-11," and had begun attending church. He also confirmed that he did not know that "if someone got arrested at an event, . . . that was a violation" of the Gemeinschaft "rules" that would result in termination.

After the close of evidence, Lentz argued that Thomas's testimony refuted the MVR's allegations. Foster did not call the police; Thomas "initiated the phone call" and it "just happened to

be at the time" of the event. Lentz contended that there was no plan or conspiracy to have Foltz arrested and that the arrest endangered no child. He also maintained that the evidence failed to show a "volitional act" as he did not "make the call." Lentz concluded that his termination lacked merit and did not result from his "bad conduct."

After considering the evidence, the circuit court found that Lentz had violated the special condition of his probation requiring completion of the Gemeinschaft Program. It emphasized his prior termination from the program, his history of avoiding his probation officer, his prior conduct at Gemeinschaft, the staff's view that he had a history of disruptive behavior, and the context of the incident. The court added:

> [O]f course there's context involved here too. This isn't your first time being terminated from Gemeinschaft. . . . And that was for falsifying sign-in sheets and not cooperating, and being dishonest and deceitful with . . . Gemeinschaft . . . . And then, you know, you've had issues [where] your [probation officer has] tried to get a hold of you here in the courtroom and you've run out of the courthouse to try to avoid him and hide before.

The court explained it could not reweigh the program's determination:

> They make a determination about whether or not you're compliant, and they didn't believe you. They felt like you orchestrated, with the assistance of your girlfriend, or you assisted your girlfriend in orchestrating a set up for your previous girlfriend, the mother of your child, who had warrants out, to come to Gemeinschaft and get arrested.

The court then revoked the unserved portions of his sentences and resuspended all but twelve months.

Lentz moved to set aside the verdict, arguing the evidence was insufficient as a matter of law and that he had committed no willful act, displayed no intractable behavior, and played no role in Foltz's arrest. At the hearing on the motion, Lentz maintained that Gemeinschaft could terminate him for any reason or no reason, but the court was not "obligated" to "make th[e] same finding." He acknowledged that this was his second termination from the program; there were "issues"

- 4 -

involving Foster during his first termination, and the Gemeinschaft staff viewed him as having a "history of disruptive and non-compliant behavior." He maintained that the MVR was "speculative" and should be given less weight than Thomas's testimony, which the court characterized as "absolutely true" and "conclusive."

The court found that Foltz's arrest at Gemeinschaft was a "grossly inappropriate scene for a child to have to endure," especially at an event "that should have been a celebration." It observed that the Gemeinschaft staff were "attuned" to the "circumstances" and acknowledged that Lentz raised a "good point" by asserting that the MVR did not include direct allegations of his conduct. The court ultimately denied the motion to set aside the verdict. Lentz timely appeals.

STANDARD OF REVIEW

The sufficiency of the evidence to support a revocation order "is a matter within the sound discretion of the trial court." *Hamilton v. Commonwealth*, 217 Va. 325, 327 (1976) (citation omitted); *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022); *see also Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) ("Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005))). That discretion is judicial in nature and "implied conscientious judgment, not arbitrary action." *Burford*, 78 Va. App. at 179 (citation omitted); *see also Hamilton*, 217 Va. at 326 (recognizing this discretion as "quite broad").

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). Weighing

- 5 -

competing evidence is a function of the fact-finder, not the appellate court. *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019); *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011).

"In evaluating whether a trial court abused its discretion, . . . '[this Court] do[es] not substitute [its] judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (first alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). The reviewing court must "show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013) (quoting *Evans v. Eaten Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)). This "standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error, disorder of reason, severe lapse of judgment, and procedural failure that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Id.* (quoting *Evans*, 514 F.3d at 322).

ANALYSIS

On appeal, Lentz argues that the circuit court erred in finding him in violation of his probation and in denying his motion to set aside the verdict. He contends that his removal from Gemeinschaft was not the result of his own willful conduct, but arose from circumstances beyond his control. Relying on *Peyton v. Commonwealth*, 268 Va. 503 (2004), *Word v. Commonwealth*, 41 Va. App. 496 (2003), and *McNair v. Commonwealth*, No. 0306-19-4, 2020 Va. App. LEXIS 33 (Feb. 4, 2020),[3] he argues that a probationer cannot be held in violation under such circumstances.

---

[3] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Fergeson v. Commonwealth*, 84 Va. App. 80, 94 n.5 (2025) (quoting *Jones v. Commonwealth*, 71 Va. App. 375, 382 n.2 (2019)).

Lentz emphasizes that Deputy Thomas's testimony corroborated his account that he did not orchestrate Foltz's arrest and contends the court improperly relied on the MVR and staff reports.

The Commonwealth responds that the record establishes reasonable cause to find a violation based on Lentz's conduct. The MVR, admitted without objection, reported that Lentz was terminated for behavior that created a potentially dangerous situation and for "drama" during a child's birthday party. The Commonwealth notes that credibility determinations and weighing competing evidence are functions of the trial court, and Lentz admitted failing to complete the program. Viewed in the light most favorable to the Commonwealth, a jurist could conclude based on the record that Lentz's actions precipitated his removal from the program, supporting revocation of his suspended sentences.

Under Code § 19.2-306(C), "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1."[4] The Supreme Court of Virginia has explained that "[t]he cause deemed . . . sufficient for revoking a suspension must be a reasonable cause." *Carroll v. Commonwealth*, 280 Va. 641, 654 (2010) (alterations in original) (quoting *Hamilton*, 217 Va. at 326-27); *Marshall v. Commonwealth*, 202 Va. 217, 220 (1960).

Evidence admitted without objection may be given its natural probative effect. *Baughan v. Commonwealth*, 206 Va. 28, 31 (1965); *Cooper v. Commonwealth*, 54 Va. App. 558, 574 n.6 (2009). Here, the Commonwealth introduced the MVR *without objection*. The MVR reflects Gemeinschaft staff's belief that Lentz "and his girlfriend invited [Foltz] to the Gemeinschaft . . . supposedly [to] participate in a birthday gathering . . . . [O]nce she arrived, the current girlfriend

---

[4] Under Code § 19.2-306(A), after suspending "the execution or imposition of sentence," a court "may revoke the suspension of sentence for *any cause* the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." (Emphasis added).

called the police and the young lady was arrested." The staff, who were "attuned" to the circumstances and Lentz's pattern of misconduct, characterized this as more than a mere visitation, perceiving it as a planned, coordinated arrest that "endanger[ed] his own child" and created "drama." The court reasonably relied on the MVR in weighing evidence rather than deferring to the staff. *See, e.g.*, *Kelley*, 69 Va. App. at 626 (weighing competing evidence is a fact-finding function entitled to deference on appeal).

Thomas's testimony did not contradict the MVR's entire substance. The primary contradiction is whether Foster placed the call. Thomas testified that he "placed the phone call" as a "follow up" to Foster in connection with a separate investigation, including her and Foltz. He stated he never spoke to Lentz and that the matter he was investigating was unrelated to Foltz's arrest. Thomas confirmed only the mechanics of the call, not the motivations, full context, or whether he was following up from a prior message shortly before the Gemeinschaft incident. Thomas's testimony did not preclude the court from inferring possible coordination between Foster and Lentz. The circuit court accepted Thomas's testimony as "conclusive," but also assigned due weight to the MVR in reaching its decision.

The circuit court also considered Lentz's own testimony, assigning it less weight. Lentz testified that "[w]e were having my child's birthday party" and that he "had invited [his] daughter and her mother [Brianna Foltz]." He also confirmed Foster's presence. Lentz explained that he did not know that if "someone got arrested at an event [he] hosted, that was a violation of the rules." But he later acknowledged that Gemeinschaft could terminate him for any reason or no reason. As such, whether Foltz's arrest that occurred during the event hosted by Lentz violated program rules is irrelevant. None of his testimony refuted the staff's inferences of a setup based on their past dealings with him. Whether the staff's inference was correct is immaterial on appeal; the relevant question is whether the court had a reasonable

- 8 -

evidentiary basis to accept the inference. *See Long v. Commonwealth*, 8 Va. App. 194, 199 (1989) (explaining that "the credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of [the trier of fact]" (alteration in original) (quoting *Barker v. Commonwealth*, 230 Va. 370, 373 (1985))). Because the staff's report was admissible and the court found it credible, we may not reweigh that determination.

Considering the MVR and the testimony of Lentz and Thomas, the circuit court's finding that Lentz's conduct led to his termination is reasonable. Presented with two plausible accounts, the court, under its discretion, resolved the dispute by crediting the MVR and staff inferences. It did not err by weighing competing accounts or in inferring that Lentz's actions caused his removal.

The circuit court also evaluated Lentz's documented history of noncompliance. It noted his prior termination for falsifying sign-in sheets and unaccounted-for time away, and highlighted his earlier evasions of his probation officer. The court's emphasis on this "context" informed its view of the most recent incident and contributed to its determination that the staff's conclusion that Lentz's conduct played a role in his removal was not subject to re-determination. Lentz's repeated noncompliance, history of evading his probation officer, and disruptive conduct at Gemeinschaft undermined trust and reinforced that termination resulted from his own conduct.

Based on this record and context, this Court cannot conclude that the circuit court abused its discretion. It considered all relevant evidence—the MVR, Thomas's testimony, and Lentz's prior record and testimony—and came to a plausible conclusion, not subject to reversal.[5] The

---

[5] The record supports a reasonable inference that Lentz's actions contributed to Foltz's arrest and the program staff's distrust in him. He hosted the birthday party, invited both women, did not stop Foster from responding to the police call, and took no affirmative action to deescalate the situation. From the point of view of Foltz, a reasonable jurist could imagine that she, too, could find the coincidence in timing suspect or questionable. It is also reasonable to infer that his current girlfriend would not have kept such information from him and that, given the ongoing investigation and criminal case between the women, Lentz may have known the

court acknowledged that it was not its role to second-guess whether program administrators "ha[d] cause" to terminate Lentz but to assess whether there was judicially sufficient cause to revoke his probation.

Additionally, Lentz's reliance on *Word*, *McNair*, and *Peyton* is unpersuasive. Those cases involved probationers whose removal stemmed from circumstances wholly outside their control—such as pre-existing criminal charges,[6] reasonable misunderstandings about program requirements, improper strict liability, and medical emergencies. *Word*, 41 Va. App. at 507; *McNair*, No. 0306-19-4, 2020 Va. App. LEXIS 33; *Peyton*, 268 Va. at 507, 511. By contrast, the circuit court found that Lentz's termination arose from conduct occurring during his probation and consistent with a pattern of noncompliance.

To the extent Lentz challenges the denial of his motion to set aside the verdict, that argument mirrors his sufficiency challenge. Since the court, within its range of discretion, found reasonable cause based on the MVR, the testimony, and Lentz's prior record, it did not abuse its discretion in declining to disturb its ruling.

CONCLUSION

For these reasons, the circuit court's judgment is affirmed. On this record, a jurist could conclude that Lentz's actions resulted in his termination from Gemeinschaft. By reaching this

_____

potential for conflict. The timing of the arrest, coupled with Lentz's pattern of disruptive and dishonest behavior and strained relationship with program staff, provided the court with a basis to conclude his termination resulted from his own actions, constituting willfulness. A reasonable jurist could conclude the same based on these facts.

[6] In *Word*, the trial court ordered Word to complete a detention center incarceration program as a condition of his probation. 41 Va. App. at 500. He was initially accepted into the program, but he was later denied from the program because staff learned that Word was charged with murders occurring *prior* to the program. *Id.* These pre-existing criminal charges were outside Word's control as being the reasonable cause basis for his violation, as he "committed no willful act that would reasonably support a violation of probation." *Id.* at 507.

conclusion, the court acted within its discretion in finding a probation violation and in denying the motion to set aside the verdict.

*Affirmed.*

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **2nd** *day of* **December, 2025**.

Logan James Lentz,                                                                                          Appellant,

  against                    Record No. 0868-24-4
                             Circuit Court Nos. CR21F00068-03 and CR21M00069-03

Commonwealth of Virginia,                                                                            Appellee.

Upon a Petition for Rehearing

Before Chief Judge Decker, Judges Ortiz and Chaney

On October 20, 2025 came appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on October 7, 2025, and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the opinion rendered on October 7, 2025 is withdrawn, the mandate entered on that date is vacated, and this appeal will be reconsidered by the panel of judges that originally considered the matter.  No further briefing or argument is required at this time.

A Copy,

Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By:    *Court of Appeals of Virginia at the direction*
       *of the Court*

Deputy Clerk

Present:   Chief Judge Decker, Judges Ortiz and Chaney
Argued at Fairfax, Virginia


LOGAN JAMES LENTZ

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0868-24-4                                  PER CURIAM
                                                              OCTOBER 7, 2025
COMMONWEALTH OF VIRGINIA


                        FROM THE CIRCUIT COURT OF PAGE COUNTY
                                  Clark A. Ritchie, Judge

                    Elena Kagan, Assistant Public Defender (Catherine French
                    Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
                    Commission, on briefs), for appellant.

                    Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
                    Attorney General, on brief), for appellee.


        Logan James Lentz appeals the circuit court's order revoking the suspended portions of

his sentences for possession with intent to distribute marijuana and driving while intoxicated.  He

argues that the court erred in finding he willfully failed to complete a court-ordered

substance-abuse program at Gemeinschaft Home.  Upon review of the record, briefs, and oral

arguments, we dismiss this appeal as moot.

                                     BACKGROUND[1]

        In August 2021, Lentz pleaded guilty to possession with intent to distribute marijuana

and driving while intoxicated.  The circuit court sentenced him to 3 years and 12 months of

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] "We recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing
party in the trial court.'"  *Pereira v. Commonwealth*, 83 Va. App. 431, 439 n.3 (2025) (quoting
*Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)).

confinement, suspending 2 years and 21 months, and placed him on 3 years of supervised probation.

Over the next three years, Lentz faced three revocation proceedings. His first term of supervised probation began in October 2021. By June 2022, his probation officer had filed a major violation report alleging that Lentz repeatedly failed to maintain contact. After a revocation hearing, the circuit court found Lentz in violation, resuspended his previously suspended sentences, and ordered him to complete the Gemeinschaft Residential Program.

Lentz resumed supervised probation in June and entered Gemeinschaft in January 2023. Within two months, the program discharged him for "repeatedly fail[ing] to follow the rules and regulation[s]," including unexcused absences and falsified sign-out sheets. At a second revocation hearing, the court again found him in violation for failing to complete Gemeinschaft, imposed 14 days of incarceration, and re-ordered him to complete Gemeinschaft. The court warned that if he did not complete the program, he would "serve out [his] sentence."

After serving the 14 days, Lentz returned to Gemeinschaft in March 2023. By May, he was discharged again after participating in a disruptive incident on the residential grounds. Following a third revocation hearing, the court imposed 12 months of active incarceration and entered its order on January 11, 2024.[2] Lentz timely appealed.

ANALYSIS

Before reaching the merits, we first determine whether Lentz's appeal is moot. The Supreme Court of Virginia has held that when "there is no actual controversy between the litigants" or if a controversy once existed but has ceased, "it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the

---

[2] The circuit court revoked the unserved portions of his sentences and resuspended all but 12 months.

case." *E.C. v. Va. Dep't of Juv. Just.*, 283 Va. 522, 530 (2012) (quoting *Franklin v. Peers*, 95 Va. 602, 603 (1898)).  For the reasons below, we conclude the appeal is moot and therefore do not reach the merits.

## I.  Mootness

This appeal is moot because Lentz has served his 12-month active sentence and reversal would provide him no relief.  In *Commonwealth v. Browne*, 303 Va. 90 (2024), the Supreme Court of Virginia explained, "[a] case is moot and must be dismissed when the controversy that existed between litigants" no longer exists.  *Id.* at 91 (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)).  The Court also held that once a petitioner fully serves the active sentence, an appeal is moot because the court cannot provide relief.  *Id.* at 96.

Lentz served his entire 12-month active sentence.  The circuit court entered its revocation order on January 11, 2024.  The Virginia Department of Corrections' system confirms that Lentz is no longer incarcerated, which counsel did not dispute at oral argument.  *See id.* at 92 (explaining that an appellate court may consider extrinsic evidence to determine mootness).  Considering this extrinsic evidence and the record, we conclude that Lentz completed his sentence.  Reversal would therefore neither remedy the punishment imposed nor provide relief, absent a continuing controversy or a recognized exception to mootness.

Federal precedent underscores our conclusion.  The United States Supreme Court recognizes that once a petitioner serves his active sentence, that incarceration cannot be "undone." *Spencer v. Kemna*, 523 U.S. 1, 8 (1998).  To maintain the litigation, the petitioner must show "some concrete and continuing injury" or an ongoing "collateral consequence" of the revocation.  *Id.* at 7-8.  Because the petitioner in *Spencer* failed to do so, the Court dismissed the case as moot.  *Id.* at 14-18; *see also United States v. Hardy*, 545 F.3d 280, 283-84 (4th Cir. 2008) (finding a case moot when a petitioner, who served his underlying sentence during the pendency

of the appeal, failed to identify any collateral consequences stemming from the revocation of his supervised release). *Spencer* thus confirms that Lentz's appeal may survive if he establishes that the revocation carries concrete, ongoing collateral consequences.

## II. Collateral consequences

The collateral-consequences doctrine does not preserve this appeal because Lentz identifies no specific, concrete, and continuing injury arising from the revocation.

The Supreme Court of Virginia has explained that release from confinement does not render a case moot when the petitioner "continues to suffer a concrete and continuing injury," which qualifies as a collateral consequence. *E.C.*, 283 Va. at 531.

In *Lane v. Commonwealth*, 82 Va. App. 658 (2024), this Court emphasized that the probationer bears the burden of arguing the existence of such "*specific* collateral consequences." *Id.* at 663 (emphasis added). This Court further explained that "because Lane did not argue specific collateral consequences, we assume without deciding that there are no continuing collateral consequences stemming from the trial court's error. Therefore, this appeal would be considered moot unless it fell under an exception[.]" *Id.*

Lentz relies on *Word v. Commonwealth*, 41 Va. App. 496, 507 (2003), to argue that entry into the National Crime Information Computer and a probation violation's effects on employment, personal opportunities, and subsequent criminal proceedings constitute collateral consequences. Although *Word* recognizes potential penal consequences stemming from a probation violation, it does not establish that those consequences alone preserve justiciability once a probationer has served his active sentence. *Id.*

*Lane*, however, makes clear that generalized references to *potential* consequences, such as those noted in *Word*, are insufficient. *Lane*, 82 Va. App. at 663 & n.3. Here, Lentz does not argue any specific, concrete, and continuing injury arising from this revocation. He makes no

claim, for example, that having three revocations on his record rather than two has adversely affected his employment, personal opportunities, or legal interests. *See id.* at 663 n.3. As in *Lane*, because Lentz "d[oes] not argue specific collateral consequences, we assume without deciding that there are no continuing collateral consequences stemming from the [circuit] court's [alleged] error." *Id.* at 663.

Without an argument of "specific collateral consequences," Lentz's appeal remains moot unless a recognized exception—such as the capable of repetition, yet evading review doctrine—applies. We turn to that exception next.

### III. Capable of repetition, yet evading review exception

The United States Supreme Court has held that the capable of repetition, yet evading review exception applies when: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer*, 523 U.S. at 17 (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)). It "applies only in exceptional situations," where the appellant "can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see also Daily Press, Inc.*, 285 Va. at 452 (explaining that courts should use the exception "sparingly").

In *Lane*, this Court applied the exception because the trial court indicated that it would continue to disregard statutory sentencing restrictions, creating a reasonable expectation that Lane or similarly situated individuals could face the same unlawful sentences. 82 Va. App. at 664-66. By contrast, in *Browne*, the Supreme Court of Virginia held the exception did not apply when a petitioner committed "at least two prior technical violations," because the sentencing limitations in Code § 19.2-306.1 no longer constrained any future revocation. 303 Va. at 95-96.

Correcting the alleged error, therefore, would neither affect the outcome nor benefit Browne. *Id.* at 96.

Here, as in *Browne*, the circuit court had already found Lentz in violation of at least two prior technical probation conditions. After a second technical violation, the court may exercise full discretion in imposing a sentence for probation violations. *See Browne*, 303 Va. at 96 (citing Code § 19.2-306.1). Any future probation violation, therefore, would not limit the court's sentencing discretion. *Id.* So even if a future revocation occurs, the court would not be bound by Code § 19.2-306.1 and would retain full discretion to revoke any remainder of Lentz's suspended sentence.

Moreover, Lentz never raised this exception, thus offering no reasonable showing that he would again face the same alleged illegality—that the court would wrongfully find him in willful violation. Although Lentz, who appears to remain on supervised probation,[3] could potentially face another wrongfully alleged willful violation, speculation is insufficient, as courts require more than conjecture to invoke this exception. *See Lyons*, 461 U.S. at 109. The capable of repetition, yet evading review exception thus does not apply because Lentz fails to "make a reasonable showing that he will again be subjected to the alleged illegality." *Id*.

CONCLUSION

Because Lentz completed his active incarceration and does not argue specific collateral consequences or make a reasonable showing that his case is capable of repetition, his appeal presents no live controversy. Therefore, this Court is compelled to dismiss this appeal as moot.

*Dismissed.*

---

[3] The January 11, 2024 revocation order places Lentz on a suspended sentence of 2 years, 8 months, and 16 days, which takes Lentz's probation into 2026.

- 6 -